# Illinois Official Reports

## Appellate Court

*Whipple v. Village of North Utica*, 2017 IL App (3d) 150547

| | |
|---|---|
| Appellate Court Caption | MARY WHIPPLE, MONTY WHIPPLE, DONNA COLEMAN, PHYLLIS COLEMAN, MORGAN COLEMAN, JOE HARMON, DEE HARMON, RITA WHIPPLE, MALCOLM WHIPPLE, MARK WOLD, SUE WOLD, FRED BLUE, and MONICA BLUE, Plaintiffs-Appellants, v. THE VILLAGE OF NORTH UTICA, La Salle County, Illinois, and ARAMONI LLC, Defendants-Appellees. |
| District & No. | Third District<br>Docket No. 3-15-0547 |
| Rule 23 order filed<br>Motion to publish<br>allowed<br>Opinion filed | March 9, 2017<br><br>April 25, 2017<br>April 25, 2017 |
| Decision Under Review | Appeal from the Circuit Court of La Salle County, No. 14-MR-62; the Hon. Cornelius J. Hollerich, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part; cause remanded. |
| Counsel on Appeal | Kerry D. Nelson and William C. Meyers, of Goldberg Kohn Ltd., Nancy C. Loeb and Deborah G. Musiker, of Bluhm Legal Clinic, both of Chicago, and Walter J. Zukowski, of Zukowski Law Offices, of Peru, for appellants. |

Jamie A. Robinson and Ronald S. Cope, of Nixon Peabody LLP, of Chicago, Herbert J. Klein, of Jacob & Klein, Ltd., and James A. Andreoni, of Perona, Peterlin, Andreoni & Brolley, LLC, both of Peru, for appellees.

Kate E. Schwartz, of Hughs Socol Piers Resnick & Dym, Ltd., of Chicago, for *amicus curiae* La Salle County Farm Bureau.

Albert F. Ettinger, of Chicago, for *amici curiae* Openlands *et al.*

| Panel | JUSTICE LYTTON delivered the judgment of the court, with opinion. Presiding Justice Holdridge concurred in the judgment and opinion. Justice McDade concurred in part and dissented in part, with opinion. |
|---|---|

## OPINION

¶ 1 Plaintiffs, 13 owners and possessors of land in La Salle County, filed a three-count complaint against defendants, the Village of North Utica and Aramoni LLC, seeking to invalidate several village ordinances that allowed Aramoni to operate a silica sand mine in Waltham Township and requesting an injunction based on prospective nuisance. The trial court granted defendants' motion to dismiss plaintiffs' second amended complaint under section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2014)), and plaintiffs' appeal. We reverse the dismissal of counts I and III and remand for further proceedings.

¶ 2                                    I. BACKGROUND

¶ 3 Aramoni is a sand mining company that owns approximately 497 acres north of Interstate 80 in Waltham Township near Utica, Illinois. Aramoni's property is comprised of tracts A, B, C, D, and E. Plaintiffs own, reside on, and/or operate farmland that is adjacent to or within ½ mile of the company's mining property.

¶ 4 In 2009, North Utica annexed tracts A and B into the village pursuant to an annexation agreement between Aramoni and North Utica. Tracts A and B contain 375 acres of Aramoni's property. Both tracts were previously zoned A-1 Agricultural and retained that designation under the agreement.

¶ 5 In August 2013, Aramoni petitioned the village to amend the 2009 annexation agreement to include tracts C, D, and E, which the county had also zoned A-1 Agricultural. At the time Aramoni petitioned the village, a moratorium on new sand mines and high capacity wells had been imposed in La Salle County, which prevented Aramoni from constructing a silica sand mine on property outside the village limits. The proposed amendments to the 2009 annexation agreement stated that future use of all five tracts of land would be silica sand mining. The petition was contingent upon North Utica granting (1) A-1 Agricultural zoning to tracts C, D,

and E, and (2) a special use permit allowing Aramoni to mine silica sand from the entire 497-acre parcel. Under North Utica zoning ordinances, mining is a permissible special use in A-1 Agricultural zones.

¶ 6 North Utica Planning Commission and North Utica Board of Trustees held joint hearings on the petitions. Plaintiffs and other members of the community opposed the proposed amendments and the special use permit. They testified that the proposed mine threatened their health and safety, jeopardized the productivity of their farmland, and interfered with the use and enjoyment of their property. The planning commission voted to recommend that the village deny the proposed annexation agreement and the special use permit.

¶ 7 One week after the planning commission recommended denying the petition, the board of trustees voted to approve Aramoni's application for annexation and rezoning and its special use permit with the proposed amendments. The amendments as approved permitted Aramoni to (1) develop and operate a silica sand mine on tracts A-E, (2) operate the mine continuously seven days a week, and (3) blast with explosives during daylight hours Monday through Friday and on Saturdays under "certain meteorological conditions." The amendments also prohibited trucks that were leaving the mine from using North Utica roads except for local deliveries.

¶ 8 In addition to the permitted activities, the agreement stated that the operation of a mine under the special use ordinance "will not constitute a nuisance" under the village nuisance ordinance. The agreement provided that Aramoni would comply with "appropriate laws, rules and regulations of all local, state and national governmental agencies," and stated that Aramoni agreed not to "cause negative impact upon any existing farm drainage tile and to repair any disruption caused by Developer." A provision of the agreement also provided that Aramoni would offer to enter into a well protection agreement with those persons owning property within one-half of a mile of the mine.

¶ 9 In connection with the agreement, North Utica adopted six ordinances allowing Aramoni to operate the property as a silica sand mine. In exchange, Aramoni agreed to pay a fee of $100,000 to the village and eight additional quarterly payments of $50,000, as well as a fee of $0.20 per ton of sand extracted from the proposed mine.

¶ 10 Plaintiffs filed a complaint against the Village of North Utica and Aramoni seeking administrative review of the annexation agreements and claiming that the related permits for rezoning, variance, and special use violated local ordinances and Illinois law. Defendants moved to dismiss, and the trial court granted the motion on the basis that administrative review was not permissible for a zoning action taken by a legislative body.

¶ 11 Plaintiffs then filed an amended complaint for declaratory judgment and injunctive relief. The amended complaint contained two counts alleging that North Utica violated plaintiffs' substantive and procedural due process rights and that, by adopting the mining ordinances, the village unlawfully surrendered its police powers to regulate any nuisance generated by the mine. Defendant again moved to dismiss under section 2-615 of the Code, claiming that plaintiffs failed to state a cause of action, and under section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2014)), arguing that plaintiffs lacked standing to bring a zoning action against them.

¶ 12 The trial court denied defendants' section 2-619 motion, holding that plaintiffs had standing to bring a claim for violation of their substantive due process rights based on their legally cognizable interest in property adjacent to or nearby the proposed mine. However, the court granted defendants' motion to dismiss the complaint pursuant to section 2-615 of the

Code, finding that plaintiffs' allegations were insufficient to sustain a cause of action for constitutional relief. The court dismissed plaintiffs' complaint without prejudice, noting that the owners and residents had not raised substantive due process issues in their previous pleadings.

¶ 13 In response to the court's order, plaintiffs filed a second amended complaint, reasserting substantive due process violations and including two new claims: equal protection and prospective nuisance. Count I alleged that North Utica's adoption of the amended agreement and ordinances and approval of the special use permit violated plaintiffs' substantive due process rights. Count II claimed that the adoption of the ordinances violated plaintiffs' equal protection rights. Count III alleged prospective nuisance based on the planned construction and operation of the proposed silica sand mine.

¶ 14 In addition to the general allegations of harm contained in the first amended complaint, the second amended complaint contained detailed factual allegations that the sand mine would harm plaintiffs' property and alleged that the mine constituted a prospective nuisance in relation to nearby residents. Plaintiffs set forth specific harms that would likely occur if Aramoni was allowed to operate its sand mine in Waltham Township, including (1) harm to plaintiffs by exposure to airborne silica sand, (2) harm to the level of plaintiffs' wells and the quality of their well water, (3) harm due to flooding of plaintiffs' properties, (4) damage to plaintiffs' farm tiles, (5) extreme noise caused by blasting during extended hours, (6) harm related to increased truck traffic, (7) harm caused by lighting at the sand mine, and (8) diminution of plaintiffs' property values.

¶ 15 Defendants filed a motion to dismiss, seeking dismissal based on lack of standing under section 2-619 of the Code and failure to state a cause of action under section 2-615 of the Code. The trial court found that plaintiffs had standing to bring their complaint but granted defendants' motion to dismiss under section 2-615, finding that plaintiffs failed to state a cause of action as to all three counts. The court's written order dismissed plaintiffs' complaint with prejudice.

¶ 16                                             II. STANDING

¶ 17 Before reaching the substance of plaintiffs' arguments, we must first address defendants' claim that plaintiffs lack standing to challenge North Utica's annexation ordinances and its decision to grant Aramoni a special use permit.

¶ 18 A party with an injury in fact to a "legally cognizable interest" has standing to bring a claim for that injury. *Village of Chatham v. County of Sangamon*, 216 Ill. 2d 402, 419 (2005). The injury, threatened or actual, must be "(1) distinct and palpable; (2) fairly traceable to defendant's actions; and (3) substantially likely to be prevented or redressed by the grant of the requested relief." *Wexler v. Wirtz Corp.*, 211 Ill. 2d 18, 23 (2004). Illinois courts have held that this standard is met where a plaintiff has a "possessory interest" in land that is adjacent to or nearby the property on which a threatened harmful action is proposed. *Rodriguez v. Henderson*, 217 Ill. App. 3d 1024, 1036-37 (1991) (plaintiffs who occupy land near rezoned property have standing); *Metroweb Corp. v. County of Lake*, 130 Ill. App. 3d 934, 936 (1985) (possessory interest is sufficient to confer standing). In this case, each plaintiff alleges a possessory interest in property adjacent to or nearby the proposed mine site. Further, the harms plaintiffs complain of may be prevented or redressed by the injunctive relief they requested.

¶ 19 Moreover, lack of standing to bring an action is an affirmative defense, and the burden of proving the defense is on the party asserting it. Here, defendants have not shown that the facts establishing plaintiffs' standing are legally insufficient. See 735 ILCS 5/2-619(a)(9) (West 2014); *PennyMac Corp. v. Colley*, 2015 IL App (3d) 140964, ¶ 11 (burden of disproving standing is on the party asserting lack of it). Defendants' motion to dismiss for lack of standing was properly denied.

¶ 20                                    III. ANALYSIS

¶ 21 Plaintiffs appeal from the trial court's grant of defendants' motion to dismiss counts I, II, and III of their second amended complaint for failure to state a claim under section 2-615 of the Code.

¶ 22 On a section 2-615 motion to dismiss, a court must accept as true all well-pled facts in the complaint, as well as any reasonable inferences that may arise from those facts. *DeHart v. DeHart*, 2013 IL 114137, ¶ 18. At the motion to dismiss stage, the merits of the case are not yet considered. *Kilburg v. Mohiuddin*, 2013 IL App (1st) 113408, ¶ 19. Rather a court is to construe the complaint liberally and should not dismiss it unless it is clearly apparent from the pleadings that "no set of facts can be proved which would entitle the plaintiff to recover." *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 305 (2008). We are not to determine whether the plaintiffs have met the heavy burden of proving that the legislative actions are unconstitutional but only whether they have alleged sufficient facts to allow the cause to proceed further. *Rodriguez*, 217 Ill. App. 3d at 1030-34. Our inquiry upon review is whether the allegations of the complaint, when construed in the light most favorable to the nonmoving party, are sufficient to establish a cause of action upon which relief may be granted. *DeHart*, 2013 IL 114137, ¶ 18. We review a motion to dismiss *de novo. Id.*

¶ 23 In this case, we must also consider the substantive rational basis standard because it is at the heart of the motion to dismiss. The rational basis standard requires the municipality to prevail if any set of facts reasonably may be conceived to justify the classification in its legislation. *Jacobson v. Department of Public Aid*, 171 Ill. 2d 314, 323-24 (1996). At this juncture in the proceedings, however, we review the allegations under the rational basis standard to determine whether the complaint survives the dismissal motion. See *Wroblewski v. City of Washburn*, 965 F.2d 452, 459 (7th Cir. 1992) (discussing review process when rational basis standard meets the standard applied to dismissal under Federal Rule of Civil Procedure 12(b)(6)). It is with that review process in mind that we evaluate the trial court's order dismissing plaintiffs' substantive due process and equal protection claims.

¶ 24                              A. Substantive Due Process

¶ 25 In dismissing count I of plaintiffs' complaint, the trial court held that plaintiffs failed to state a claim of arbitrary and capricious rezoning that would have violated their substantive due process rights. In the trial court's view, plaintiffs failed to allege facts showing that the adoption of the annexation ordinances was invalid under *La Salle National Bank of Chicago v. County of Cook*, 12 Ill. 2d 40 (1957), and *Sinclair Pipe Line Co. v. Village of Richton Park*, 19 Ill. 2d 370 (1960), and that North Utica's decision to grant Aramoni a special use permit violated the principles set forth in *City of Chicago Heights v. Living Word Outreach Full Gospel Church & Ministries, Inc.*, 196 Ill. 2d 1 (2001).

¶ 26    To state a cause of action for a violation of substantive due process, a plaintiff must allege that the deprivation of his or her property interest is arbitrary, unreasonable, or capricious and that the legislation at issue bears no rational relationship to the public welfare. *Safanda v. Zoning Board of Appeals*, 203 Ill. App. 3d 687, 695 (1990). When a legislative zoning ordinance is challenged based on substantive due process, we examine the ordinance for arbitrariness under the six-factor test set forth in *La Salle National Bank. Our Savior Evangelical Lutheran Church v. Saville*, 397 Ill. App. 3d 1003, 1027 (2009). Those factors include (1) the existing uses and zoning of nearby property, (2) the extent to which property values are diminished by the particular zoning restrictions, (3) the extent to which the destruction of the plaintiff's property values promotes the health, safety, morals, or general welfare of the public, (4) the relative gain to the public as compared to the hardship imposed on the individual property owner, (5) the suitability of the subject property for the zoned purposes, and (6) the length of time the property has been vacant as zoned. *La Salle National Bank*, 12 Ill. 2d at 46-47. Our supreme court identified additional factors to consider in *Sinclair Pipe Line*, namely (1) whether a comprehensive zoning plan for land use and development exists, and whether the ordinance is in harmony with it and (2) whether the community needs the proposed use. *Sinclair Pipe Line*, 19 Ill. 2d at 378. Courts evaluate the factors as a whole to determine whether the zoning or rezoning action was reasonably related to a legitimate government interest and was a reasonable method to achieve that purpose. *Napleton v. Village of Hinsdale*, 374 Ill. App. 3d 1098, 1110 (2007). The list is not exclusive, and no single factor is controlling. *La Salle National Bank*, 12 Ill. 2d at 47. Moreover, a complaint does not fail simply because it does not allege facts in support of each and every factor. *Rodriguez*, 217 Ill. App. 3d at 1029-30.

¶ 27    In *Living Word*, our supreme court held that a municipality's decision to grant a special use permit is also a legislative action that is reviewed for arbitrariness as a matter of substantive due process. *Living Word*, 196 Ill. 2d at 25-26. The court noted that, generally, a special use permit may not be denied on the ground that the use is not in harmony with the surrounding neighborhood. However, "a special use permit must be denied when it is determined from the facts and circumstances that the grant of the requested special exception use would result in an adverse effect upon adjoining and surrounding properties unique and different from the adverse effect that would otherwise result from the development of such a special exception use located anywhere within the zone." (Internal quotation marks omitted.) *Id.* at 21-22.

¶ 28    Evaluating plaintiffs' substantive due process claim under the *La Salle/Sinclair* factors and *Living Word* in the context of a motion to dismiss, we find that the trial court erred in dismissing count I of plaintiffs' complaint.

¶ 29    The first *La Salle/Sinclair* factor is the existing use and zoning of nearby property. The property surrounding the proposed sand mine is zoned A-1 Agricultural, the same zoning designation as the Aramoni property, and A-1 Agricultural includes a special use for mining. Plaintiffs' complaint states that "[t]he neighborhood surrounding the annexed land on which the Proposed Mine will be operated has historically been and is today overwhelmingly rural and agricultural." The map attached to the complaint shows that the surrounding area is zoned A-1 and indicates that another sand mine is located within the A-1 zone. Thus, while nearby property is primarily agricultural, the annexation ordinances conform to the A-1 designation and use of the other properties in the zoning area.

¶ 30    Plaintiffs' complaint alleges that the second factor, diminution of property values, weighs in their favor. It states that the "development and operation of a silica sand mine in close proximity to plaintiffs' homes and farms will adversely affect the value of their properties." Plaintiffs support their claims with reports of diminished property values due to sand mines in other locations and a report from the Federal Reserve Bank stating that studies of gravel and coal mining in other parts of the country show that homes situated near a mine or sand truck route lose value. These allegations are sufficient, for purposes of a section 2-615 motion, to support a claim that the annexation ordinances diminish the value of the property surrounding Aramoni's property.

¶ 31    The third and fourth factors also favor plaintiffs' position. The promotion of public welfare and the gain/loss balance are additional *La Salle/Sinclair* factors that, as alleged, suggest North Utica's legislative action may have violated substantive due process. The parties have alleged that "[t]he harm to Aramoni from denial of the special use would be the inability to profit from the Proposed Mine at this location." By contrast, as detailed in the second amended complaint, plaintiffs will suffer harm to their health, water supply, and agricultural land, and they will experience a decrease in the values of their properties. These harms may outweigh the loss of any potential gain to Aramoni.

¶ 32    The next two factors, five and six, are easily resolved regardless of the procedural stage of the case. Factor five indicates that the property is suitable for the zoned purpose. The property is zoned A-1 Agricultural and mining is a special use in an A-1 zone. Factor six is not a factor because the property has not been vacant for any length of time.

¶ 33    The last two *La Salle/Sinclair* factors tip the balance in plaintiffs' favor. The seventh factor involves the care with which the community has undertaken to plan its land use development, and the eighth factor tests the need in the community for the proposed use. As alleged in the complaint, the plan specifically mandates that the north and northeast sections of the planning area should continue as agricultural. Section 7-1 of the plan defines "agricultural" as "undeveloped or sparsely developed or primarily used for farm-related activities." In contrast, mining is specifically listed as an "industrial" use. Thus, the annexation ordinances are not in harmony with the community's comprehensive plan. The eighth factor also favors plaintiffs where the community's need for the use is minimal. Three silica sand mines are currently in operation in La Salle County, and plat maps attached to the complaint indicate that two are in close proximity to Aramoni's proposed mine. Taking as true the facts pleaded in the second amended complaint, the need for additional sand mines in Waltham Township is negligible.

¶ 34    Plaintiffs' second amended complaint also alleges sufficient facts to satisfy the *Living Word* test in light of a section 2-615 motion to dismiss. Plaintiffs have sufficiently alleged numerous adverse effects that will result from the proposed mine's "particular use" at the "particular location" in immediate proximity to their homes and farms that differ from adverse effects that would result if the mine were located elsewhere in the A-1 zone. They have alleged a concentration of mine-related truck activity and noise and harms that would adversely affect the quality and flood potential of a nearby stream. None of these specific harms would necessarily result from the proposed mine at another location in the zoning area. Accepting plaintiffs' allegations of harm as true, they have stated a claim for a violation of their substantive due process rights under *Living Word*.

¶ 35    Here, it was improper to dismiss plaintiffs' second amended complaint at the pleading stage for perceived failure to meet the *La Salle/Sinclair* criteria and the *Living Word* test.

Plaintiffs' met a significant number of the factors and thereby stated a constitutional substantive due process claim. Therefore, the trial court erred in dismissing count I based on failure to state a claim.

¶ 36                                    B. Equal Protection

¶ 37      Plaintiffs also argue that they sufficiently stated a claim for a violation of their equal protection rights as pleaded in count II.

¶ 38      To state a cause of action for a violation of equal protection, plaintiffs must allege that there are other similarly situated people who are being treated differently than them and that there is no rational basis for this difference. *Safanda*, 203 Ill. App. 3d at 695. The guarantee of equal protection means that if a governmental body treats similarly situated people dissimilarly, it must have a rational basis for doing so. *Jenkins v. Wu*, 102 Ill. 2d 468, 477 (1984). The classification must be reasonable, not arbitrary, and must rest on some ground of difference having a fair and substantial relation to the legislation. *Id.* The threshold question is whether similarly situated people are being treated dissimilarly. *Safanda*, 203 Ill. App. 3d at 695. The burden of proof is on the one asserting the unconstitutionality of an ordinance, and there is a presumption that the ordinance is valid. *Village of Cahokia v. Wright*, 11 Ill. App. 3d 124, 131 (1973).

¶ 39      Plaintiffs' second amended complaint alleges that the annexation agreement:

> "abrogates the protection of [North Utica's] nuisance laws solely with respect to plaintiffs and others living and farming in the immediate vicinity of the proposed mine while continuing to provide the far-reaching protections of its nuisance laws to all others. This denial of equal protection is irrational and violates plaintiffs' equal protection rights."

These allegations fail to provide sufficient support for a claim of a violation of equal protection because they are legal conclusions rather than statements of fact. See *Smith v. Malone*, 317 Ill. App. 3d 974, 979 (2000) (court must accept as true all well-pleaded factual allegations and disregard conclusions of law).

¶ 40      In this case, the annexation agreement does not single out plaintiffs for disparate treatment. First, the village's actions of adopting the annexation ordinances and granting the special use permit do not shield plaintiffs from the protection of nuisance laws. North Utica's nuisance ordinances do not prohibit plaintiffs from taking action against the sand mine under state or common law. They also do not prohibit the village from taking action against the sand mine if it is operated in a manner contrary to the ordinances. The annexation ordinances simply provide that the lawful, normal operation of a silica sand mine is not a nuisance under the village ordinances.

¶ 41      Moreover, the annexation agreement does not treat plaintiffs any differently than the other residents of North Utica. It does not single out plaintiffs for unequal treatment. North Utica's interpretation of its ordinance applies generally and equally to all residents of the village. Plaintiffs are permitted to bring a nuisance action against Aramoni if the mining activity creates an irreparable harm or causes injury, as is any resident of North Utica.

¶ 42      In *Beverly Bank v. Board of Review*, 117 Ill. App. 3d 656 (1983), the court held that a plaintiff alleging that a law is neutral on its face but administered in an unequal fashion must allege that the discrimination was "intentional or purposeful." *Id.* at 664. To establish an

intentional or purposeful act, a plaintiff must plead and show that the decision maker singled out a particular group for disparate treatment and selected the course of action, at least in part, for the purpose of causing adverse effects on an "identifiable group." (Internal quotation marks omitted.) *Id.* Here, no such allegation has been made in plaintiffs' second amended complaint. Because this legislation operates the same as to each resident of North Utica and plaintiffs have not alleged any facts to suggest that it is being applied in a discriminatory manner, their equal protection claim must fail. Thus, the trial court properly dismissed count II of plaintiffs' second amended complaint.

¶ 43                          C. Prospective Nuisance

¶ 44    Plaintiffs argue that the trial court erred in dismissing their prospective nuisance claim because they alleged that it is "highly probable" that the proposed mine will harm plaintiffs' health and safety and welfare, the availability of ground water, their crops and property values, and the peaceful use and enjoyment of their homes and farms. They maintain that the allegations contained in the second amended complaint were not merely legal conclusions and were supported by ample evidence in the record, including sworn testimony and submissions by defendants.

¶ 45    A private nuisance is the substantial invasion of a person's interest in the use and enjoyment of his property. *Helping Others Maintain Environmental Standards v. Bos*, 406 Ill. App. 3d 669, 689 (2010). The invasion must be substantial, either intentional or negligent, and unreasonable. *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 204 (1997). Whether particular conduct constitutes a "nuisance" is determined by the conduct's effect on a reasonable person. *Id.* A "nuisance must be physically offensive to the senses to the extent that it makes life uncomfortable." *Dobbs v. Wiggins*, 401 Ill. App. 3d 367, 375-76 (2010). A prospective nuisance is a candidate for injunctive relief where the defendant is engaged in a hazardous undertaking at a location "which seriously and imminently poses a threat to the public health." *Village of Wilsonville v. SCA Services, Inc.*, 86 Ill. 2d 1, 30 (1981). Moreover, the existence of possible government oversight does not prevent nuisance or provide the appropriate recourse under a prospective nuisance claim. *Village of Bensenville v. City of Chicago*, 389 Ill. App. 3d 446, 494 (2009).

¶ 46    In *Fink v. Board of Trustees of Southern Illinois University*, 71 Ill. App. 2d 276 (1966), the plaintiff sought to enjoin construction of a dam and also the discharge of sewage effluent in a watercourse, which flowed past plaintiffs' property. Construction of the dam was not enjoined, but the discharge of effluent was prospectively enjoined. The court stated:

> "While, as a general proposition, an injunction will be granted only to restrain an actual, existing nuisance, a court of equity may enjoin a threatened or anticipated nuisance, where it clearly appears that a nuisance will necessarily result from the contemplated act or thing which it is sought to enjoin. This is particularly true where the proof shows that the apprehension of material injury is well grounded upon a state of facts from which it appears that the danger is real and immediate. While care should be used in granting injunctions to avoid prospective injuries, there is no requirement that the court must wait until the injury occurs before granting relief." *Id.* at 281-82.

¶ 47    Here, the alleged nuisance is prospective because the silica sand mine is not yet in operation. As noted above, a plaintiff may seek injunctive relief for a prospective nuisance. *Id.* at 282. A "defendant may be restrained from entering upon an activity where it is highly probable that it will lead to a nuisance, although if the possibility is merely uncertain or

contingent he may be left to his remedy of damages until after the nuisance has occurred." *Prosser & Keeton on the Law of Torts* § 89, at 640-41 (W. Page Keeton et al. eds., 5th ed. 1984). The plaintiff must show by a preponderance of the evidence that the defendant's operation is a prospective nuisance. *Village of Wilsonville*, 86 Ill. 2d at 14.

¶ 48 In *Village of Wilsonville*, the defendant's attempt to establish and operate a chemical waste disposal site was properly enjoined where the trial court heard conflicting evidence regarding the hazards likely to arise. The trial court accepted the plaintiff's evidence, finding that it showed that it was "highly probable" that the toxic chemical waste deposited at the site could escape, either through explosions, migration, subsidence of the site itself, or groundwater. The court found no abuse of discretion in granting the preliminary injunction, observing that "[a] court does not have to wait for [the harm] to happen before it can enjoin such a result." *Village of Wilsonville*, 86 Ill. 2d at 27; see also *Nickels v. Burnett*, 343 Ill. App. 3d 654, 663 (2003) (appellate court affirmed trial court's decision to enjoin the construction of a hog farm based on extensive affidavits and articles describing harms associated with hog farms).

¶ 49 In this case, we agree with defendants that some of plaintiffs' allegations of irreparable harm are based on legal conclusions that are not sufficiently supported by facts. Claims such as harm to field tile, flooding, and well contamination are speculative and are not supported by affidavits or other documents demonstrating a direct harm.

¶ 50 However, not all of the allegations in count III can be so easily dismissed. Other facts and allegations have been adequately alleged in support of plaintiffs' prospective nuisance claim. Plaintiffs have also alleged (1) that there will be continuous lights and noise of up to 133 decibels from blasting, drilling, and rock crushing equipment, (2) that 146 trailer loads of sand exiting the operation each day will increase traffic on rural roads, (3) that the operation will discharge up to 1.25 million gallons of effluent per day into the Pecumsaugan Creek, and (4) that the mining operation will add particulate silica dust to the air around the mining site. These are facts, not legal conclusions. When these facts are considered in tandem with the operating parameters allowed by the annexation agreement and ordinances, plaintiffs' allegations are sufficient to state a claim of prospective nuisance. The annexation agreement, which was attached to plaintiffs' complaint, states that Aramoni is allowed to conduct silica sand mining operations 24 hours a day, seven days a week, and to use explosive devices during daylight hours five days a week and on Saturday, if necessary. Considering the potential to mine 365 days a year using mining equipment, lights, and trucks, plaintiffs' complaint alleged sufficient facts to support the argument that the proposed mine will lead to a nuisance. Accepting all well-pleaded allegations as true and considering them in a light most favorable to plaintiffs, it is likely that the noise, lights, dust, and traffic will substantially interfere with plaintiffs' ability to use and enjoy their property.

¶ 51 Defendants cite *Village of Willow Springs v. Village of Lemont*, 2016 IL App (1st) 152670, in support of their argument that the trial court properly dismissed plaintiffs' prospective nuisance claim. In *Willow Springs*, the village filed a prospective public nuisance complaint seeking to enjoin its neighboring village, Lemont, from approving a zoning reclassification and proposed industrial development of certain property. On appeal, the court affirmed the trial court's dismissal of the plaintiff's complaint, noting that to survive a motion to dismiss, a plaintiff seeking to enjoin a prospective nuisance must allege that the harms are more than just a possibility, it must allege that the harms are highly probable. *Id.* ¶ 48. The court found that Willow Springs failed to meet that threshold. The court also determined that the village's

allegations of harm were too uncertain to survive a motion to dismiss because the proposed zoning reclassification and development had not yet been approved by the neighboring village. *Id.* ¶ 51.

¶ 52 We find *Willow Springs* distinguishable. Unlike the village of Willow Springs, plaintiffs have alleged that the proposed mine constitutes a prospective private nuisance based on detailed allegations of harm. They have alleged specific harms to their property, nearby waterways, and surrounding roads. *Willow Springs* is also distinguishable in that the challenged annexation agreement in this case has already been accepted by North Utica and ordinances have been passed permitting Aramoni to develop the property. Contrary to the proposed development in *Willow Springs*, defendant's development and operation of a silica sand mine has already been approved by the municipality.

¶ 53 Illinois courts have held that invasions of property rights as a result of noise, water contamination, bright lights, and diminished property values constitute a cognizable private nuisance. See *Dobbs*, 401 Ill. App. 3d at 379 (noise from barking dogs in a kennel next to residence in a rural area was a private nuisance); *Fink*, 71 Ill. App. 2d at 281-82 (effluent released into creek which then flowed onto plaintiff's property was a nuisance); *Phelps v. Winch*, 309 Ill. 158 (1923) (noises and bright lights from cars leaving an event were a nuisance); *Nickels*, 343 Ill. App. 3d at 663 (extensive evidence of potential harms to health, safety, and welfare of nearby residents and diminished property values established prospective nuisance of proposed hog farm). Plaintiffs have alleged that similar invasions on their properties constitute a prospective nuisance. It remains to be seen whether plaintiffs can prove that it is highly probable that Aramoni's proposed sand mine will lead to a nuisance. However, a section 2-615 motion does not require plaintiffs to prove their case at this juncture, and plaintiffs' allegations are sufficient to show that the operation of the mine may result in a private nuisance. Thus, the trial court erred in dismissing count III.

¶ 54                           IV. CONCLUSION

¶ 55 The judgment of the circuit court of La Salle County granting defendants' section 2-615 motion to dismiss is affirmed in part and reversed in part, and the cause is remanded for further proceedings.

¶ 56 Affirmed in part and reversed in part; cause remanded.

¶ 57 JUSTICE McDADE, concurring in part and dissenting in part.

¶ 58 The majority has reversed the order of the trial court granting the defendants' motion to dismiss counts I and III of the plaintiffs' complaint. I concur with that decision.

¶ 59 I dissent from the affirmance of the dismissal of count II, which raises a claim that plaintiffs' equal protection rights were violated by their annexation into North Utica. No claim should be dismissed unless there is no set of facts alleged which could state a viable claim for relief. "[A] cause of action should not be dismissed pursuant to section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery." *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006).

¶ 60 Included in all three counts of the complaint is paragraph 28, which states:

"28. On information and belief, the annexation of the Proposed Mine site into North Utica was proposed by Aramoni to evade or circumvent the moratorium on sand mines in effect in LaSalle County at the time. Further, irrespective of intent, the annexation did evade or circumvent the moratorium on sand mines in effect in LaSalle County at the time."

¶ 61 Here plaintiffs have alleged that they lived in an area in which they were protected by La Salle County's moratorium against the initiation of any additional sand mining activities and that they were cut out of the group of county residents who were protected by the moratorium and annexed into North Utica so that Aramoni would be free to begin a new sand mining operation. They have also alleged within count II that they will suffer significant specified harm to their persons and their property that those who continued under the protection of the moratorium would escape and that the harm is irreparable because they have been deprived of legal recourse by the annexation agreement's declaration and definition of the mine as *not* a nuisance. Although the plaintiffs did not formulate their argument in this precise manner, I believe these facts they have alleged could, if they were allowed to replead, state a viable claim of an equal protection violation. I would, therefore, find that the trial court also erred in dismissing count II with prejudice.