**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 190095-U

Order filed January 13, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| VILLAGE OF ORION, an Illinois Municipal Corporation, | ) ) ) | Appeal from the Circuit Court of the 14th Judicial Circuit, Henry County, Illinois. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | Appeal No. 3-19-0095 Circuit No. 17-MR-152 |
| PATRICIA A. HARDI and MICHAEL LARSON, | ) ) ) | |
| Defendants-Appellees. | ) ) | Honorable Dana R. McReynolds, Judge, Presiding. |

_____

JUSTICE SCHMIDT delivered the judgment of the court.
Justice McDade concurred in the judgment.
Justice Holdridge, dissented.

**ORDER**

¶ 1    *Held*:   The trial court erred in granting defendants' motion to dismiss.

¶ 2    The Village of Orion (Village) filed a complaint to enjoin an ongoing nuisance under its Village ordinances. Defendants, Patricia Hardi and Michael Larson, filed an undesignated motion to dismiss the complaint. At the hearing on the motion, the trial court found *sua sponte* the Village had failed to state a claim due to the absence of a previous ordinance violation

adjudication. The Village filed a motion to reconsider or, in the alternative, to amend its complaint, which the trial court denied. On appeal, both parties argue the motion to dismiss was advanced under section 2-615 of the Code of Civil Procedure (Code). 735 ILCS 5/2-615 (West 2018). We reverse and remand for further proceedings.

¶ 3                                    I. FACTS

¶ 4        In July of 1998, Patricia Hardi was appointed by the Village as the animal control officer and served in that capacity for 15 years. The Village did not maintain a kennel; instead, Hardi would take dogs and cats acquired during her job duties into her home. In December of 2013, the Village eliminated the position of animal control officer and enacted an ordinance limiting the number of dogs and cats per household to three. Specifically, the ordinance provides:

> "11.0 KENNELED ANIMALS. It shall be unlawful to keep or harbor more than three (3) dogs or three (3) cats over the age of six months on any premises in the village, except in a licensed kennel, or at a veterinarian clinic."

A different section of the Village ordinances states:

> ".10 REPEATED AND CONTINUING VIOLATIONS. To repeat and continue to do any act, acts, omission or omissions which constitute a violation of this code or chapter thereof or of other ordinances of the [Village]."

¶ 5        The ordinance also contained a penalty provision detailing fines for first and subsequent offenses and allowing the Village to seek injunctive relief.

¶ 6        In April of 2014, Hardi and Larson and attended a Village board meeting requesting that their kennel license be renewed. The Board took no action on the request to renew the license,

instead passing a resolution to allow Hardi to keep her existing dogs for their natural lifetime. While the cats were discussed during the board meeting, no resolution was passed allowing Hardi to keep a number of cats in excess of the ordinance limit.

¶ 7 In April of 2016, the State charged Hardi with cruelty to animals (510 ILCS 70/3.01 (West 2016)) after a search of defendants' property revealed the presence of more than 70 cats. Hardi pled guilty to the charge and, as a condition, could keep 10 cats already in her possession but was not to acquire any additional animals. The following April, the Village sent a notice to abate nuisance to defendants, alleging a continuing violation of Chapter XII, Section 11.0 of the Village code due to the harboring of more than three cats at the property.

¶ 8 On July 18, 2017, plaintiff filed a complaint to enjoin a continuing nuisance. Specifically, the complaint set forth that,

> "[o]n or about October 21, 2016, Defendants, along with their legal counsel met with representatives of the Village and the Village Attorney, at which time demand was again made upon Defendants to comply with the ordinance. Further, the Defendants were advised that:
>
> ***
>
> b) That it thereafter came to the attention of the Board, that at the Village board meeting held on April 21, 2016, the Defendants had grossly misstated the number of cats they were keeping at their residence."

¶ 9 The complaint goes on to note that defendants were served with a notice to abate nuisance and subsequent to that notice "have kept and continue to keep more than three (3) cats at their residence." The Village asked the trial court to grant injunctive relief.

¶ 10    In response, defendants filed a motion to dismiss, arguing that the ordinance's numerical limitation on cats was arbitrary and bore no rational basis to any of the objectives of the ordinance and that the prior order entered by the court as part of Hardi's guilty plea, allowing her to keep 10 cats, superseded the Village ordinance. Within defendants' motion, they admitted "[a]s of June 25, 2018, Hardi remains on Probation, has abided by the Probation Order and has nine (9) cats in her household." Defendants did not specify whether their motion was brought pursuant to section 2-615 or section 2-619 of the Code.

¶ 11    The trial court held a hearing and arguments were presented. The gravamen of defendants' arguments followed their motion. In open court, defendants' counsel again stated "we're admitting that she's had nine cats when everything was filed." *Sua sponte* the trial court raised the issue of whether the pleadings were sufficient to demonstrate a continuing nuisance without evidence of a prior adjudicated violation.

> "THE COURT: All right. Well, I don't think that, based on my reading of these ordinances, I don't think that—that the City here, in the absence of at least one or two tickets or filings against these people for violating the section that you're talking about, and a decision being made, I mean, there is a penalty provision in this ordinance, and a decision being made at a separate proceeding, on a separate date that, in fact, there was a violation of the ordinance that you can argue that it's a continuing violation. I mean, there has to be some finding that there has been a violation previously before I think the Court can—can take the stance that under this ordinance, which requires there to be a finding of a continuing violation. I can't take evidence at this point in one proceeding and find that on such and

- 4 -

such a date there was a violation, and then again on such and such a date there is a violation. There is no provision for me to impose a penalty for that and then say therefore it's a continuing violation. As I said, there could have been a ticket issued the day after this ordinance was passed or whenever it became effective indicating these people had too many dogs or cats. In fact, there was years that went by when no ticket was issued. No allegation was made that they're violating the ordinance. I don't think you can come in here without at least one or two violations and a finding by the Court that there was a violation and say that it automatically is a nuisance. As I've indicated, I don't think there is any constitutional issue here with regard to the number that the City felt was appropriate as far as dogs and cats in their City. I don't think there is a problem with the ordinance with regard to that.

As far as this action, I think it jumps the gun. I think there has to be something—a ticket filed that could have been issued a long time ago and even today and some sort of an action where a Court has found that there has been a violation, at least one or two before all of a sudden it becomes a nuisance. A continuing violation has to be something that is found prior to the filing of this action. I can't find it within the action.

All right. I reject the constitutional argument that you made, Mr. Vandersnick. I'm going to grant your motion to dismiss based upon the City's failing to file at least one or two actions with regard to the penalty provision of this ordinance regarding the keeping of a number—the number

of cats and dogs by these—or I guess it's just cats, by these people—I assume it's just cats, that's what you've alleged, right?"

The trial court granted defendants' motion to dismiss without specifying any statutory sections the ruling was pursuant to.

¶ 12     The Village filed a motion to reconsider or, in the alternative, request for leave to amend along with an amended complaint which bolstered the facts relating to the ongoing nature of the presence of more than three cats at defendants' property. The trial court denied the motion to reconsider and did not allow the Village to amend the complaint.

¶ 13     This appeal followed.

¶ 14                                    II. ANALYSIS

¶ 15     On appeal, the Village argues the trial court erred in dismissing the original complaint, as well as denying leave to file the amended complaint. Defendants argue the dismissal was proper and ask for us to affirm the lower court.

¶ 16     As an initial matter, we note that both parties assert that defendants' motion to dismiss was pursuant to section 2-615. Upon examination of the record, there are no statutory sections cited in either the motion itself or in the trial court's ruling. "Meticulous practice dictates that a lawyer specifically designate whether [the] motion to dismiss is pursuant to section 2-615 or section 2-619." *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 484 (1994). When confronted with such an omission, reviewing courts typically evaluate the undesignated motion "according to its grounds, its requests, or its treatment by the parties and the trial court." *Id.* While not always fatal, reversal may be required if the nonmoving party was prejudiced by the movant's improper motion practice. *Id.*

¶ 17 In *Illinois Graphics Co.*, our supreme court contrasted a motion under section 2-615 of the Code with a motion under section 2-619:

"A motion to dismiss under section 2-615 attacks only the legal sufficiency of a complaint. Such a motion does not raise affirmative factual defenses, but alleges only defects appearing on the face of the complaint. [Citations.] A section 2-615 motion is required to point out the defects complained of and must specify the relief sought. [Citation.] The only matters to be considered in ruling on such a motion are the allegations of the pleadings themselves." *Id.* at 484-85.

"[A] section 2-619 motion to dismiss allows for an involuntary dismissal of a claim based on certain defects or defenses. ***

While section 2-619 motions, like those under section 2-615, attack defects appearing on the face of the pleadings, that ground should be coupled in the motion with a ground based on matter not appearing of record." *Id.* at 485.

¶ 18 Defendants' motion to dismiss, although undesignated, was in the nature of a section 2-619 motion raising affirmative matter in the form of defenses and did not attack the factual pleadings or contend the Village had failed to state a claim. See *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367 (2003) ("An affirmative matter, in a section 2–619(a)(9) motion, is something in the nature of a defense which negates the cause of action completely ***.") (Internal quotation marks omitted.) (quoting *Nickum*, 159 Ill. 2d at 486). At the hearing on the motion, the trial court raised the issue of whether the Village could prove the ongoing nature of the nuisance absent adjudication of a previous violation. According to the trial court, the

- 7 -

ongoing nature of the nuisance could not be proven at trial and should have been established before the filing of the action. The court found this fatal and ruled that without a previous adjudication of nuisance, the Village had "jump[ed] the gun" and could not claim a continuing nuisance. Of course, this ruling does not rest on any of the grounds advanced in the section 2-619 motion put forth by defendants.

¶ 19       Our review of a trial court's grant of a motion to dismiss, regardless of whether it is pursuant to section 2-615 or section 2-619, is *de novo*. See *Becker v. Zellner*, 292 Ill. App. 3d 116, 122 (1997); see also *Whipple v. Village of North Utica*, 2017 IL App (3d) 150547, ¶ 22; *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116 (1993).

¶ 20       The trial court's ruling that the Village was precluded from seeking injunctive relief from an alleged ongoing nuisance due to its failure to prosecute a previous violation finds no support in law. The authority on point in this matter requires the opposite conclusion. See *City of Chicago v. Krisjon Construction Co.*, 246 Ill. App. 3d 950 (1993) (stating trial court had authority to issue injunction against operator of waste site due to violation of city ordinance); *Village of Bensenville v. Botu, Inc.*, 39 Ill. App. 3d 634 (1976) (stating city was not limited to issuing fines for ordinance violations under facts of case and where ordinance provides city may seek court action to abate a nuisance); *City of Chicago v. Fritz*, 36 Ill. App. 2d 457, 465 (1962) ("Municipal corporations may call upon a court of equity for assistance to abate nuisances."). The continuing nature of the nuisance was an issue of proof to be fleshed out at trial or, at the soonest, at the hearing on the Village's motion for summary judgment. Moreover, the ordinance section the trial court relies upon for the idea that a previous violation must be adjudicated before the nuisance can be of an ongoing nature states only that to be an ongoing nuisance the action "constitute a violation." The word adjudication is absent.

¶ 21 Unable to affirm on the grounds advanced below, defendants recite the all-too-familiar axiom that we may affirm the trial court's judgment for any reason apparent in the record. While invoking this legal maxim, defendants point out that the Village failed to plead that the cats being sheltered in their home were over the age of six months as required by the ordinance. However, this matter is properly raised at the trial level in a section 2-615 motion. Raising this matter now after advancing what in substance was a section 2-619 motion below undoubtedly prejudices the nonmoving party. If it was clear that defendants wished to attack the factual pleadings, the Village could have amended the pleadings to cure these defects.

¶ 22 Unable to affirm on the ground advanced by defendants and with no other basis relevant to the section 2-619 motion being apparent, we must reverse the trial court's judgment. Accordingly, the trial court erred in granting defendants' motion to dismiss.

¶ 23 III. CONCLUSION

¶ 24 For the foregoing reasons, we reverse the judgment of the circuit court of Henry County and remand for further proceedings.

¶ 25 Reversed and remanded.

¶ 26 JUSTICE HOLDRIDGE, dissenting.

¶ 27 I respectfully disagree. The majority states that the Board passed a resolution to allow Hardi to keep her existing dogs for their natural lifetime but there was no resolution passed to allow Hardi to keep a number of cats in excess of the ordinance limitation. *Supra* ¶ 6. The Board's meeting minutes from the April 2014 meeting provide the following:

"After much discussion about renewing a kennel license for Ms. Patti Hardi, and with an opinion from Attorney Ames that a state license would first need to be secured, it was moved by Mitton, seconded by Drucker to allow Ms. Hardi to keep

- 9 -

her existing dogs and allow them to live out their natural lives with the requirement that as those dogs pass on, the limit allowed by village code be honored and never again succeeded. Ayes: Peterson, O'Leary, Mitton, Newman, and Drucker. Noes: None. Absent: Lawson.

Additionally, the board discussed Ms. Hardi's cats, numbering around 10. Ms. Hardi had the cats prior to the ordinance establishing a limit of three and will be allowed to keep the cats for their natural lifetimes but then required to abide by village rules."

The Board's language in its own meeting minutes, specifically that Hardi "will be allowed to keep the cats for their natural lifetime," clearly indicates that the Board agreed to let Hardi keep around ten cats despite the new ordinance limiting a resident's cat ownership to a number of three. The Board appeared to justify its decision by noting that Hardi had the cats in question before the ordinance was enacted. Although there was no formal vote following this permission, the Board's language is unambiguous that Hardi could exceed the ordinance in question for the cats in her possession.

¶ 28 Nonetheless, in February 2018, nearly *four years* later, and several months after the complaint was filed in this case, the Board passed a resolution to clarify and correct the April 2014 meeting minutes. The Board replaced the statement "Ms. Hardi had the cats prior to the ordinance establishing the limit of three and will be allowed to keep the cats for their natural lifetimes but then required to abide by village rules." with "No action was taken by the Board in regard to the cats." This resolution also stated that its meeting minutes of October 2014 included a statement "in regard to the prior vote by the Village Board with respect to Ms.

Hardi's five dogs [that] should not have included cats, since no action had been previously taken in regard to the cats."

¶ 29    Not only did the Board state in its April 2014 meeting minutes that Hardi was allowed to keep the cats in her possession, but it appears that the Board reiterated this authorization in its meeting minutes from October 2014. The Board only sought to clarify and correct these meeting minutes after it initiated the litigation in this case.

¶ 30    I would find that the Board's February 2018 resolution stating that it never reached an agreement allowing Hardi to possess more cats than allowed by the ordinance in violation of the *ex post facto* clauses of the United States and Illinois Constitutions. These clauses provide protection from "[r]etroactive application of a law that inflicts greater punishment than did the law that was in effect when the crime was committed." See *People v. Cornelius*, 213 Ill. 2d 178, 207 (2004). In this case, Hardi was granted authorization from the Board in April 2014, and confirmed in October 2014, to keep the cats in her possession for their natural lifetimes in excess of the new ordinance.[1] The Board's February 2018 resolution effectively voided this permission and rendered her then legal act of possessing these cats for four years illegal. For these reasons, I would affirm the trial court's ruling in this case.

---

[1] I take judicial notice of the fact that cats have nine lives.