Leroy M. Fink and Clarence W. Bohm, Plaintiffs-Appellees, v. The Board of Trustees of Southern Illinois University, Defendant-Appellant.

Gen. No. 65–94.

Fifth District.

June 16, 1966.

Rehearing denied July 26, 1966.

Donald R. James and Durr & Durr, all of Edwardsville, for appellant.

Reed, Armstrong and Gorman, of Edwardsville, for appellees.

EBERSPACHER, J.

Plaintiffs brought suit to enjoin construction of a dam upstream on an intermittent watercourse which flows past their property. They also sought to enjoin defendant from discharging sewage effluent from their sewer treatment plant into said watercourse. Plaintiffs further sought to have their attorney fee expense taxed as costs. The trial court, after hearing, denied the injunction as to the construction of the dam and denied attorney fees. From this order plaintiff appeals. The trial court did enjoin the discharge of sewage effluent and from this order defendant appeals.

Defendant is in the process of constructing a university campus upstream from plaintiffs' property. As part of the construction, defendant has placed a dam across one branch of the watercourse to impound a lake. The lake water will be used for heating and cooling and

recreation purposes. Below the lake about 900' from plaintiffs' property a sewer treatment plant has been constructed.

The only complaint concerning the construction of the dam is that it would reduce the flow of water through plaintiffs' property. The dam will impound water on one of two branches of the watercourse and only such quantities from that source as go over the spillway will henceforth flow past plaintiffs' land. However, there is evidence that the flow from the other branch of the watercourse will be increased as a result of construction of asphalt parking areas and other construction which increases the runoff.

■ All testimony shows that flow in the watercourse is intermittent. Plaintiffs do not use the water for drinking or household purposes. The loss, if any, to the plaintiffs by any decrease in the flow is minimal. On the other hand, the benefits to defendant from construction of the dam are substantial. Under these circumstances the refusal to enjoin construction of the dam was proper. Haack v. Lindsay Light & Chemical Co., 393 Ill 367, 66 NE2d 391; Clark v. Lindsay Light & Chemical Co., 341 Ill App 316, 93 NE2d 441.

■ ■ Allowance of attorney fees is the exception rather than the rule. No special circumstances justifying their allowance was shown and hence denial of attorney fees was proper. Ritter v. Ritter, 381 Ill 549, 46 NE2d 41.

The granting of the injunction against the discharge of sewage effluent presents the serious question involved in this appeal. A review of the evidence in regard to this question is necessary.

Two engineer representatives of the firm which planned the sewer system for defendant testified that two alternatives for the disposition of the sewage effluent from the sewage treatment plant were considered. One

was the method which the defendant is presently endeavoring to employ, that is, to spill the effluent into the intermittent watercourse after chlorination treatment, and the other was to construct an outfall sewer line so that the effluent will be carried to Cahokia Creek, thence to the diversionary channel and to the Mississippi River. These engineers had recommended the outfall sewer line and that was still their recommendation at the time of trial.

There was testimony that in the initial phase a maximum of 1,000,000 gallons of effluent per day would be emptied into the stream and, later, in the second phase, 2,000,000 gallons per day. This discharge would not be at a constant rate; there would be peak periods during the day when the volume of flow would be comparable to the discharge from seven fire hoses operating at capacity.

The testimony shows that the effluent will be clear, odorless, of low bacteria content, and within the standards established by the State Sanitary Water Board as long as the sewage treatment plant operates properly. There was testimony that on occasion an operational failure of the plant occurs. Failure of the sewage treatment to operate in a proper manner will cause the quality of the effluent to be such as would not meet the standard. There was other testimony concerning the possibility of a breakdown or not properly operating. Defendant plans to use the treatment plant to train students in the proper operation of such a unit. It is contended that this use would tend to increase the possibility of operational failure.

There was testimony offered by defendant that the activated sludge treatment plant followed by disinfection, which is chlorination, is the highest type of practical and feasible treatment normally accepted in the state of Illinois and that the effluent which will be dis-

279

charged will not cause pollution as defined by the Sanitary Water Board Act. It was further shown that the Sanitary Water Board had examined the plans and issued a permit for the construction of this system.

Plaintiffs testified that they lived in property adjoining the watercourse and that their property is zoned for residential purposes; that it would bother them and interfere with their use and enjoyment of the property to have the effluent in the watercourse. They testified that, in their opinion, the passage of the effluent through their property would adversely affect its value. While many of their complaints are subjective in nature, they evidenced their sincerity by stating and stipulating to an offer to provide a right-of-way across their property for the outfall sewer without cost to the defendant. The water presently in the watercourse was recently tested and found unfit for drinking purposes.

By agreement of the parties, the trial judge made a personal inspection tour of the premises of plaintiffs and defendant.

■■ The case of Barrington Hills Country Club v. Village of Barrington, 357 Ill 11, 191 NE2d 239, would constitute ample authority for the issuance of this injunction. However, in Haack v. Lindsay Light & Chemical Co., supra, while the Barrington case was not referred to in the opinion, it was overruled in part. Since the evidence in this case shows that there is an available substitute method for defendant to dispose of the effluent, the decision of this case depends upon a question of fact as to whether or not the injury to plaintiffs is substantial and they have no adequate remedy at law. Here the chancellor was particularly well advised; he not only, by agreement of the parties, inspected the premises, but he saw the witnesses and listened to their testimony, and heard the project engineer and another engineer testify that in making their recommendation to use the outfall sewer method they had considered all

the factors; he heard their conclusions that although the outfall sewer method would cost more initially, it would be the more economical method, eliminating the cost of chlorination treatment, and that after the recovery of the additional initial cost, there would be a considerable yearly savings because of the lower operating costs. Under such circumstances his findings of fact should not be disturbed by this court unless they are manifestly against the weight of the evidence. Schnepper v. Ashlock, 404 Ill 417, 88 NE2d 853; Evangeloff v. Evangeloff, 403 Ill 118, 85 NE2d 709; Greer v. Carter Oil Co., 373 Ill 168, 25 NE2d 805. The very substantial increase in the flow coupled with the fact that the flow would at times consist solely of sewage effluent would, under the circumstances of this case, justify a finding of substantial injury. Since the injury would be of such a continuing nature there is no adequate remedy at law.

The case of Dunlap Property Owners Ass'n, Inc. v. City of Edwardsville, 22 Ill App2d 95, 159 NE2d 4, relied upon by defendants, involved a different factual situation. The only question involved in the Dunlap case was pollution. Here there are other factors causing the injury whether or not there is pollution in a technical sense.

■ ■ Defendant further contends that an injunction is not proper since the damages are prospective. In this case the fact that this is now an intermittent watercourse and the fact that defendant proposes to regularly spill large quantities of sewage effluent into said watercourse are not in dispute. While, as a general proposition, an injunction will be granted only to restrain an actual, existing nuisance, a court of equity may enjoin a threatened or anticipated nuisance, where it clearly appears that a nuisance will necessarily result from the contemplated act or thing which it is sought to enjoin. This is particularly true where the proof shows that the apprehension of material injury is well grounded upon

■■■■■■

a state of facts from which it appears that the danger is real and immediate. While care should be used in granting injunctions to avoid prospective injuries, there is no requirement that the court must wait until the injury occurs before granting relief.

We find neither error, nor abuse of discretion and the judgment of the circuit court of Madison County is affirmed.

Judgment affirmed.

GOLDENHERSH and MORAN, JJ., concur.