HAZEL LARSON et al., Plaintiffs-Appellees, v. VILLAGE OF CAPRON, Defendant-Appellant.

(No. 71-109; ▮▮▮▮▮▮▮

Second District—February 8, 1972.

Richard R. Cross, of Woodstock, for appellant.

Reno, Zahm, Folgate & Skolrood, of Rockford, (Wesley E. Lindberg, of counsel,) for appellee.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Defendant, Village of Capron, appeals from a judgment enjoining it from discharging its sewage effluent into a tile running through the land of plaintiffs, and awarding damages to certain plaintiffs.

Plaintiffs are owners of farmland generally to the west of the Village, between the Village and Beaver Creek. Somewhat over fifty years ago, Libby, McNeil & Libby, a cheese factory, installed a 12 inch tile with open joints (characterized as "Field Tile") through plaintiffs' lands for the purpose of carrying off water and waste. It was later used for the same purpose by the Bowman Dairy Co. The tile runs along the course of an intermittent stream and ends at a dug drainage ditch approximately one mile from Beaver Creek. Over the years several plaintiffs have connected lateral tiles to the 12 inch tile to drain their lands. In 1965, the defendant was issued a permit to install a sewage treatment plant with discharge into an intermittent tributary of Beaver Creek. The plant went into operation in December of 1968, and defendant connected the discharge pipe from the plant to the tile running through plaintiffs' lands. No easement over plaintiffs' lands was ever obtained by Libby, Bowman, or the defendant.

In July, 1969, plaintiffs brought an action seeking damages and an injunction against defendant's use of this tile for the discharge of sewage effluent. Trial was had without a jury, and by agreement of the parties, the court personally surveyed the premises. Plaintiffs presented evidence that since the Village of Capron has been using this tile, the volume of water flowing through the tile is greater than ever before and, due to backing up of the water and numerous breaks in the tile, sections of plaintiffs' lands have flooded to the extent that they are impossible to cultivate. Some of the water was said to smell like sewage and have green scum on it, and the tile was also said to be causing erosion. Defendant's witnesses testified that there are only a few breaks in the tile, being mainly around a railroad trestle and on plaintiff Moellenkamp's land, and that

the plant is being run efficiently and cleanly. There was further testimony to the effect that the tile follows the natural draw of the land.

Judgment was entered enjoining defendant from using plaintiffs' premises commencing January 1, 1973, with specific findings that defendant's acts deprived plaintiffs of their property without due process of law and without due compensation, and that plaintiffs were denied the equal protection of the law. Damages were also awarded to certain plaintiffs. Further, defendant was ordered to "cause the effluent from its sanitary sewer disposal plant to be conveyed by closed conduit, after obtaining proper easements, to the Beaver Creek or any tributary thereof, which produces enough water flow during the driest week in any ten year period to provide enough water flow to mix one gallon of water with one gallon of sewer effluent," as required by the present regulation of the State of Illinois Environmental Protection Agency (which evolved from the Sanitary Water Board). It is from these orders that the defendant appeals.

■■ Defendant contends that since the tile runs along an intermittent stream and follows the natural draw of the land, it can be used for the transmission of sewage effluent. We do not agree. It is true, as defendant contends, that the right of drainage through a natural watercourse is a natural easement appurtenant to the land of every individual owner over whose land such natural watercourse runs, (*Bundy v. City of Sullivan* (1954), 1 Ill.App.2d 212, 214, 117 N.E.2d 302; *Mauvaisterre Dist. v. Wabash Ry. Co.* (1921), 299 Ill. 299, 308, 132 N.E. 559; *C., B. & Q. Ry. Co. v. The People* (1904), 212 Ill. 103, 109, 72 N.E. 219), and that a natural watercourse is not required to be used in its natural state, but may be improved. (*Lambert et al. v. Alcorn* (1893), 144 Ill. 313, 325, 326, 33 N.E. 53; *Saelens v. Pollentier* (1956), 7 Ill.2d 556, 561, 131 N.E.2d 479; *Broadwell Drainage Dist. v. Lawrence* (1907), 231 Ill. 86, 97, 83 N.E. 104.) But we question the applicability of these cases to the one before us. The question presented in each was whether the owner of a higher piece of property could be enjoined from allowing *surface* water coming naturally onto his property to drain onto an adjoining lower piece of property.[1] The cases held that the owner of the higher estate has the right to allow this surface water to follow the natural course of drainage onto the lower estate; and that the owner of the higher estate may even construct artificial devises such as ditches or drains on his property to more effectually carry off the surface water. However, in the case before

---

[1] In *Bundy*, the plaintiff sought an injunction against the drainage of both water and waste from defendant city's streets onto his land, but such waste was that which naturally collected on the streets, and the court treated the case as involving only the drainage of surface waters.

us, defendant attempts to drain not surface water, but sewage effluent from the whole village. Therefore, the above cases do not apply to the issue before us.

■■ The right to an injunction against the use of a natural waterway for the discharge of sewage effluent depends on a question of fact as to whether the plaintiffs have suffered an actual and substantial injury for which there is no adequate remedy at law. Defendant cites *Dunlap Lake Prop. Owners Assn v. Edwardsville* (1959), 22 Ill.App.2d 95, 98, 159 N.E.2d 4, and *White v. Long* (1967), 12 Ohio App.2d 136, 231 N.E.2d 337, 340 to the effect that plaintiffs have not shown any substantial injury. In *Dunlap,* the defendant created a condition whereby, on infrequent occasions, diluted sewage from its sewer system could flow into a watercourse a quarter of a mile from plaintiffs' private lake. The court, noting that there was no testimony of sewage being carried more than 100 feet toward the lake, found that there was no actual evidence of pollution, and refused to grant an injunction. In *White*, the court denied plaintiff's request for an injunction against the operation of a sewage disposal plant discharging fluid into a natural watercourse upstream from plaintiff's property. Again, there was no evidence of the discharge of sewage and waste on plaintiff's lands, and the court considered only the question of whether the discharge of effluent into the watercourse on defendant's land constituted an enjoinable nuisance. We feel that the case before us is more closely analogous to *Fink v. Board of Trustees of Southern Ill. Univ.* (1966), 71 Ill.App.2d 276, 280, 281, 218 N.E.2d 240, cited by plaintiffs. There, the defendant was enjoined from discharging sewage effluent from its sewer treatment plant into an intermittent watercourse flowing past plaintiff's property despite the fact that the plant provided the highest type of treatment normally accepted in Illinois. The court found substantial injury from the fact that there would be a substantial increase in the flow of water in the waterway, with this flow at times consisting solely of sewage effluent. Here, there is testimony that the volume of water flowing through the tile is greater than at any time before the Village of Capron hooked onto it, and that sections of plaintiffs' lands are impossible to cultivate due to flooding. The tile was said to have numerous breaks in it, and to be causing erosion. Some of the water escaping from the tile was said to smell like sewage and have green scum on it, and it was stated that there were unidentified particles and prophylactics floating in it. Defendant has the available substitute method of disposing of the effluent through a closed conduit, as ordered by the lower court. This alternative was available at the time of installation of the plant, but the Village chose to hook on to the plaintiffs' title.

■■ The trial judge found sufficient actual damages to warrant the

granting of an injunction. This conclusion is not against the manifest weight of the evidence. (See *Fink v. Board of Trustees of Southern Ill. Univ., supra,* at page 281; *Elliott v. Nordlof* (1967), 83 Ill.App.2d 279, 283, 227 N.E.2d 547.) Since the injury is of a continuing nature there is no adequate remedy at law.

The trial court's award of damages to three plaintiffs is similarly supported by sufficient evidence in the record to preclude us from holding it clearly and manifestly against the weight of the evidence. We therefore affirm.

Judgment affirmed.

GUILD and MORAN, JJ., concur.