2024 IL App (3d) 220517

Opinion filed January 19, 2024

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | |
|---|---|
| STOP NORTHPOINT, LLC; BRIAN PODEST; ) | Appeal from the Circuit Court |
| JOHN LENER JR.; COLEY O'CONNELL; ) | of the 12th Judicial Circuit, |
| SARAH O'CONNELL; ROBERT HAUERT; ) | Will County, Illinois, |
| ANGEL HAUERT; JOSEPH KINSELLA; ) | |
| ATTILIO MICCI; GERALDINE MICCI ) | |
| JONES; DOMINIC ORLANDO; TRICIA ) | |
| MAAS; HARRY HOECHBAUER; GUS ) | |
| BASELEON; KENNETH HICKEY, By and ) | |
| Through His Mother and Legal Guardian, ) | |
| Sharon Hickey; ) | |
| DAN DE CAPRIO; CAROL DE CAPRIO; ) | |
| ROBERT PILLION; ALEJANDRO ) | |
| GUTIERREZ; WILLARD GUTIERREZ; ) | |
| KEVIN POMYKALA; JOHN WALKER; ) | |
| MICHAEL PAMONICUTT; BARBARA J. ) | |
| WHITFIELD; JOHN VALLRUGO; ) | |
| JONATHAN JANS; ANDREW KANIVE; ) | |
| KATHLEEN A. KIRBY; JAMES W. VANEK; ) | |
| JAMES WALSH; KATHLEEN WALSH; ) | |
| BISHOP STEVEN EVANS; JOHN ) | |
| SHERIDAN; THE ALLEN J. LYNCH MEDAL ) | |
| OF HONOR VETERANS FOUNDATION; ) | |
| VETERANS ASSISTANCE COMMISSION ) | |
| OF LAKE COUNTY; VETERANS ) | |
| ASSISTANCE COMMISSION OF DEKALB ) | |
| COUNTY; VETERANS ASSISTANCE ) | |
| COMMISSION OF MADISON COUNTY; ) | |
| ROGER BRADLEY; MICHAEL ) | |
| UREMOVICH; RAYMOND GARZA; ) | |
| RICHARD SMERZ; DENNIS O'CONNOR; ) | |
| TERRY O'CONNOR; KEN SOBBE; ) | |
| JOSEPH A. COCIELKO; WILLIAM B. KLEE; ) | |
| FRANK NOVAK; TRAVIS GORDON; ) | |

RONALD M. BIENIAS; JOHN C. KRAUSE; )
DANIEL D. SYPIEN; WILLIAM T. WELCH; )
TIMOTHY TERRELL; and WADE KROHN, )
                                   )
    Plaintiffs-Appellants,         )
                                   )          Appeal No. 3-22-0517
        v.                         )          Circuit No. 20-CH-739
                                   )
                                   )
THE CITY OF JOLIET; EAST GATE –    )
LOGISTICS PARK CHICAGO, LLC; and   )          Honorable
NORTHPOINT DEVELOPMENT, LLC,       )          Theodore J. Jarz,
                                   )          Judge, Presiding.
    Defendants-Appellees.          )

_____

JUSTICE DAVENPORT delivered the judgment of the court, with opinion.
Justices Brennan and Albrecht concurred in the judgment and opinion.


**OPINION**

¶ 1        Stop NorthPoint, LLC, along with the Allen J. Lynch Medal of Honor Veterans Foundation

and various individuals (plaintiffs) appeal the dismissal of their fourth amended complaint for

declaratory and injunctive relief against defendants, the City of Joliet (City), East Gate-Logistics

Park Chicago, LLC, and NorthPoint Development, LLC (collectively, East Gate). The circuit court

dismissed plaintiffs' fourth amended complaint with prejudice for failure to state a cause of action.

See 735 ILCS 5/2-615 (West 2020). For the reasons that follow, we affirm in part and reverse in

part.

¶ 2                                I. BACKGROUND

¶ 3                             A. Original Complaint

¶ 4        In October 2020, Stop NorthPoint, LLC, along with 17 individuals, filed suit to prevent the

City from annexing, and East Gate from developing, 1262 acres of unincorporated land in Will

County between the villages of Elwood and Manhattan. Plaintiffs alleged that East Gate's

2

proposed development, an industrial business park (NorthPoint Development) complete with warehouses and truck terminals, would constitute a public and private nuisance and that defendant's preannexation agreement providing for the development was null and void. Thereafter, plaintiffs filed an amended complaint naming 18 additional plaintiffs. They also moved for a temporary restraining order and a preliminary injunction enjoining the City from holding two hearings scheduled for December 2020 regarding the preannexation agreement. The circuit court denied plaintiffs' motion.

¶ 5        Defendants executed an annexation and development agreement (annexation agreement) following the second December 2020 hearing. The annexation agreement provided that East Gate intends to develop a multi-phased light industrial business park on primarily vacant land within three miles of two major intermodal facilities. The agreement acknowledged the presence of "little residential property in close proximity to the Property" and stated that the NorthPoint Development "is specifically designed to minimize its impact on the surrounding community, and to decrease the current amount of truck traffic on Illinois Route 53 and other local roads outside of the park by a variety of features described herein, including bridges and a closed loop truck network." In addition to its annexation and zoning provisions, the agreement provided for, *inter alia*, road improvements, a closed loop truck network, sewer and water systems, residential buffers, subdivision applications, and community enhancement contributions. It included a "time is of the essence" clause and provided for a 20-year term.

¶ 6                            B. Second Amended Complaint

¶ 7        In March 2021, plaintiffs filed a 10-count second amended complaint naming 20 additional plaintiffs, for a total of 56. Aside from Stop NorthPoint, LLC, which was formed to oppose the NorthPoint Development, plaintiffs are primarily military veterans organizations and individuals

3

(many veterans themselves) who own property or reside in Will County. Some have family or friends interred in the Abraham Lincoln National Cemetery, a national shrine located southwest of the proposed development. Some own property near or contiguous to the proposed development. The second amended complaint alleges, most notably, that the proposed development will constitute a nuisance, the annexation agreement is void, and the City conducted the December 2020 hearings without proper notice and in violation of the Open Meetings Act (5 ILCS 120/1 *et seq.* (West 2020)).

¶ 8        In April 2021, defendants moved to dismiss the second amended complaint pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2020)). After briefing and an oral argument, the circuit court issued a written order in July 2021 granting defendants' motion to dismiss the second amended complaint, though without prejudice as to any specific, identifiable private nuisance claim an individual plaintiff may acquire in the future.

¶ 9        In August 2021, plaintiffs moved to reconsider and, in the alternative, for leave to file a third amended complaint. After their motion was fully briefed, plaintiffs learned the City's plan commission intended to hold a public hearing in November 2021 to address an amended annexation agreement which plaintiffs believed could moot part of the second amended complaint and give rise to new causes of action. Plaintiffs asked the court to stay its ruling on the motion to reconsider until after the plan commission's meeting. The court granted plaintiffs' request and ultimately granted plaintiff leave to file a third amended complaint. In December 2021, defendants executed the amended annexation agreement following a public hearing.[1] Plaintiffs filed a third amended complaint in February 2022.

_____

[1]The amended agreement largely retained the provisions of the original annexation agreement as stated in paragraph five of this opinion.

4

¶ 10                    C. Third Amended Complaint

¶ 11                    1. *Allegations and Exhibits*

¶ 12    Plaintiffs' third amended complaint contains the five counts at issue in this appeal. Counts I and II form the gravamen of the third amended complaint. Under those counts, plaintiffs allege that, if allowed to proceed, the NorthPoint Development would constitute a private nuisance (count I) and a public nuisance (count II). The complaint cites a 2020 traffic impact study commissioned by the Village of Manhattan indicating that "at full build-out, the Development will generate an additional 10,370 trucks per day." This figure, plaintiffs allege, is a conservative estimate.

¶ 13    In support of their private and public nuisance claims, plaintiffs allege that constant truck traffic will (1) cause noise, vibration, pollution, and harm to the environment; (2) interfere with the dignity, serenity, and quiet of the Abraham Lincoln National Cemetery; (3) endanger pedestrians, bicyclists, and drivers; (4) generate noxious exhaust and diesel fumes harmful to public health and to wildlife, wetlands, and streams; (5) deteriorate streets and necessarily increase property taxes to cover repairs; (6) lower plaintiffs' property values and cause constant noise and vibrations rendering plaintiffs' homes unhealthy and untenantable; (7) produce vibrations likely to cause damage to nearby homes, property, and structures; (8) increase plaintiffs' travel times; and (9) lead to a rise in semi-truck crash incidents and collisions with wildlife. Count II additionally alleges the proposed development will constitute a public nuisance under the City's municipal code.

¶ 14    Count III, brought as a purported taxpayer claim, alleges the new annexation agreement is null and void, and unenforceable for vagueness and indefiniteness.

¶ 15    Count IV alleges the November 2021 plan commission hearing was constitutionally deficient due to a notice fraught with deficiencies and inaccuracies relating to parcel index numbers (PINs), legal descriptions, and acreage.

¶ 16    Count V alleges violations of the Open Meetings Act based on the City's failure to require face masks at the November and December 2021 plan commission hearings despite a state-wide individual mask mandate and despite the risk that attendees would contract the Omicron variant of COVID-19.

¶ 17    All counts include a request for (1) a preliminary and permanent injunction enjoining defendants from developing the proposed industrial business park, (2) a declaratory judgment that the annexation agreement is void and the annexation is unlawful, and (3) attorney fees and costs.

¶ 18    Plaintiffs attached the following exhibits to their complaint: (1) defendants' amended annexation agreement, (2) a letter to the Village of Elwood from the Department of Veterans Affairs-National Cemetery Administration, expressing concerns about the NorthPoint Development, (3) traffic crash reports involving truck drivers causing property damage to the Abraham Lincoln National Cemetery, (4) a research study finding that older Americans who regularly breathe even low levels of air pollution face an increased mortality risk, (5) a resolution passed by the City of Edgerton, Kansas, to issue $500 million in industrial revenue bonds to fund the second development phase of a logistics park similar to the NorthPoint Development, (6) a public health study predicting 1900 premature deaths and $17 billion in social costs nationwide due to emissions attributable to traffic congestion, and (7) the public hearing notice for the City's November 2021 plan commission hearing.

¶ 19                                    2. *Motion to Dismiss*

6

¶ 20    In March 2022, defendants filed a combined motion to dismiss pursuant to section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2022)). Under section 2-615, they argued that all five counts failed to allege sufficient facts to support any cause of action. Under section 2-619, defendants challenged plaintiffs' standing under counts I (private nuisance) and III (annexation agreement validity). As to count I, defendants argued that, except for a few plaintiffs who allegedly own property contiguous to the proposed development, none of the plaintiffs have standing to bring a claim for private nuisance. As to count III, defendants argued plaintiffs had no standing to challenge the annexation agreement's enforceability and, moreover, contract enforceability does not provide a basis for a taxpayer suit.

¶ 21    In response, plaintiffs argued defendants' section 2-615 argument attempted to hold plaintiffs to an "impossible pleading standard." Plaintiffs maintained they had standing to raise their claims and emphasized defendants were "trying to push through this gargantuan trucking and warehouse development without even a traffic or environmental study."

¶ 22    3. *Environmental Consultation Requirement*

¶ 23    After briefing and oral argument, the court took the matter under advisement and directed the parties to submit any law with respect to the necessity of an environmental impact study. Upon receiving the parties' submissions, the court found that "issues should be considered with regards to the provisions of the Illinois Natural Areas Preservation Act (525 ILCS 30/17) and *** *McHenry County Defenders v. City of Harvard*, 384 Ill. App. 3d 265 (2008)." In July 2022, the court allowed plaintiffs to file a fourth amended complaint restating the third amended complaint "in full as it exists now" and adding any counts to address issues concerning the Illinois Natural Areas Preservation Act (525 ILCS 30/1 *et seq.* (West 2022)). The court further stated that the parties' arguments concerning defendant's motion to dismiss "shall stand as a fully briefed and argued

7

Motion to Dismiss those counts that are restated in the Fourth Amended Complaint, with ruling as to those counts to remain pending."

¶ 24     Thereafter, plaintiffs filed a fourth amended complaint maintaining the existing five counts and adding a sixth count, which sought a writ of *mandamus* directing the City to engage in environmental consultations with the Illinois Department of Natural Resources. On defendants' motion, the court dismissed plaintiff's *mandamus* claim (count VI) for mootness, finding the City had completed the environmental consultation process demanded by plaintiffs. Count VI is not at issue in this appeal.

¶ 25                              D. Circuit Court Decision

¶ 26     In September 2022, the circuit court granted defendants' motion to dismiss counts I through V of the fourth amended complaint, which had "restated verbatim the 5 Counts of the Third Amended Complaint and added Count VI seeking Mandamus." The court entered a written ruling in which it found count I (private nuisance) improperly "lumps Plaintiffs that have distinct rights and interests into a single group." Observing the nonuniform impact of noise and exhaust emissions on plaintiffs and that "safety will vary greatly based on proximity," the court dismissed count I "without prejudice as to any future individual nuisance claim any Plaintiff may acquire when a parcel in the annexed area threatens or creates a specific identifiable and measurable nuisance use on the parcel."

¶ 27     The court found the nuisance allegations failed to state a cause of action for prospective nuisance, whether private or public. In particular, the court found that while plaintiffs alleged the proposed development would substantially increase truck traffic, "a proposed or contemplated time for completing build-out is not alleged and frankly is not known." It further stated, "The complaint is describing conditions at an undetermined point in the future which by the nature of

8

the development remains several years away." The court found, accordingly, that "[t]he threat of future high volume truck traffic is not supported by any factual allegations showing that the threat is *immediate*." (Emphasis in original.)

¶ 28        Further, in dismissing count II (public nuisance), the court opined that, due to the operation of a nearby intermodal facility, truck traffic was likely to increase even if the proposed development was enjoined. The court emphasized the need for benchmark data to allow for an assessment of unreasonableness. It stated,

> "Existing high volumes of local truck traffic already pose environmental and safety concerns which the Fourth Amended Complaint does not factually or statistically allege and is needed to determine whether future increases pose unreasonable levels by comparison. If an unreasonable level can be determined and factually alleged, it is possible that current volumes of truck traffic exceed it and would then be subject to injunctive relief."

¶ 29        In dismissing count III, which challenged the annexation agreement's validity, the court found plaintiffs had not shown a failure to agree on an essential term. It further found plaintiffs had not alleged a legal basis, in the annexation agreement or otherwise, for their claim that a traffic study was a condition precedent to the agreement's execution. The court observed that count III was "premature in assuming that *** the parties to the Annexation Agreement will disagree on topics not specifically defined in the agreement." The court did not address defendants' standing argument directly; however, it observed that "[n]o disagreement or dispute between the parties to the [annexation agreement] is before the Court."

¶ 30        In dismissing count IV, which alleged a deficient hearing notice, the court determined that the Open Meetings Act did not "require that the notice be as detailed and error-free as argued [by

9

plaintiffs." The court also noted that plaintiffs did not allege the legal descriptions or PINs prevented anyone from understanding the size, location, or boundaries of the area covered by the proposed annexation.

¶ 31 Finally, in dismissing count V, which alleged Open Meetings Act violations, the court noted the Governor's face-mask mandate was directed at individuals, not municipalities. It further noted that no legal basis exists, in statute or common law, to invalidate an ordinance or annexation agreement passed at a public hearing where face masks were not worn.

¶ 32 Stop NorthPoint, LLC, the Allen J. Lynch Medal of Honor Veterans Foundation, and 33 individual plaintiffs appealed the circuit court's ruling.[2]

¶ 33                                    II. ANALYSIS

¶ 34 On appeal, plaintiffs contend the circuit court erred in dismissing counts I through V of their fourth amended complaint for failure to state a cause of action under section 2-615 of the Code (735 ILCS 5/2-615 (West 2022)). A section 2-615 motion to dismiss challenges a complaint's legal sufficiency based on facial defects. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). Because Illinois is a fact-pleading jurisdiction, a complaint must contain sufficient factual allegations to bring its claims within legally recognized causes of action. *Id.* at 429-30. The circuit court considers, in ruling on a section 2-615 motion, whether the complaint's factual allegations, when viewed in a light most favorable to the plaintiff, are sufficient to state a claim on which relief can be granted. *Id.* at 429. A section 2-615 motion to dismiss admits all well-pled facts and all reasonable inferences drawn therefrom. *Id.* A complaint should not be dismissed under section 2-615 unless it is clear no set of facts can be proven that will entitle the plaintiff to

_____

[2]The remaining 21 plaintiffs did not participate in this appeal and are not further referred to herein as plaintiffs.

10

relief. *Id.* We review an order granting a section 2-615 motion *de novo*, drawing all reasonable inferences in favor of the nonmovant. *Id.* Moreover, we review the circuit court's judgment, not its rationale, and may affirm the judgment on any basis supported by the record. *Smith v. The Purple Frog, Inc.*, 2019 IL App (3d) 180132, ¶ 23.

¶ 35                                    A. Nuisance

¶ 36        Because plaintiffs bring claims for both private and public nuisance, we begin by distinguishing between the two types of nuisances.

¶ 37                                1. *Private Nuisance*

¶ 38        "A private nuisance is the substantial invasion of a person's interest in the use and enjoyment of his property." *Whipple v. Village of North Utica*, 2017 IL App (3d) 150547, ¶ 45. The invasion must be unreasonable and either intentional or negligent. *Id.* "Whether particular conduct constitutes a 'nuisance' is determined by the conduct's effect on a reasonable person." *Id.* "A nuisance must be physically offensive to the senses to the extent that it makes life uncomfortable." (Internal quotation marks omitted.) *Id.*

¶ 39                                2. *Public Nuisance*

¶ 40        Unlike a private nuisance, which is an unreasonable interference with a property interest, a public nuisance is an unreasonable interference with a right common to the public. *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 366 (2004). "Such rights include the rights of public health, public safety, public peace, public comfort, and public convenience." *Id.* at 370-71. Nuisance may affect both a public and private right simultaneously; therefore, claims for private and public nuisance are not mutually exclusive.

¶ 41                       B. Count I—Prospective Private Nuisance

11

¶ 42        Because plaintiffs seek to enjoin a proposed development still in the planning phase, they necessarily proceed on a prospective nuisance theory. "[A] prospective nuisance is a fit candidate for injunctive relief." (Emphasis omitted.) *Village of Wilsonville v. SCA Services, Inc.*, 86 Ill. 2d 1, 25 (1981). "[A] court of equity may enjoin a threatened or anticipated nuisance, where it clearly appears that a nuisance will necessarily result from the contemplated act or thing which it is sought to enjoin." (Internal quotation marks omitted.) *Id.* at 26. Stated differently, an anticipated nuisance may be enjoined preemptively if its threatened or potential harm is highly probable. See *id.* at 26-27.

¶ 43        Plaintiffs argue they have sufficiently pled a prospective private nuisance claim. We agree, in part. Plaintiffs have alleged the proposed development will result in a significant increase in semi-truck traffic, which will lower plaintiffs' property values and generate constant noise, vibration, and light pollution, rendering plaintiffs' homes unhealthy and untenantable. They have also alleged the increased truck traffic will substantially increase environmental pollutants, in the form of smoke, fumes, and soot. They attached to their complaint a public health study indicating that constant exposure to even low levels of air pollution increases the mortality risk for older individuals. Because neighboring residents will be disproportionately subjected to the alleged pollutants, count I raises a sufficient claim for private nuisance. Our analysis, however, does not stop there.

¶ 44                                1. *Property Interest*

¶ 45        Defendants argue that almost no plaintiffs possess a property interest at risk of invasion by the proposed development. Defendants presented this argument in the circuit court as (1) a sufficiency challenge under section 2-615 and (2) a standing challenge under section 2-619(a)(9). Under both sections, defendants argued, in essence, that the lack of an actionable property interest

12

was evident on the face of the complaint. Section 2-619 provides that a motion to dismiss must be supported by affidavit *if* the alleged defects do not appear on the face of the pleadings. 735 ILCS 5/2-619 (West 2022). By negative inference, if the grounds do appear on the face of the pleadings, the motion need not be supported by affidavit. In fact, even a section 2-615 motion can be a proper vehicle for an affirmative defense if that defense is apparent from the face of the complaint. *R&B Kapital Development, LLC v. North Shore Community Bank & Trust Co.*, 358 Ill. App. 3d 912, 921 (2005). Because defendants' argument does not tread beyond the complaint, it is "peculiarly within the area of confluence between section 2-615 and section 2-619(a)(9)." *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 486 (1994).

¶ 46        On appeal, defendants renew only their sufficiency argument. They maintain that, while a plaintiff's property interest "is an aspect of standing that may be raised as an affirmative defense, it is also an element of the cause of action for private nuisance." Although we may consider any argument in defendants' motion to dismiss that supports the circuit court's ruling, we give precedence to the argument before us—namely, that count I is insufficiently pled as to any plaintiff who failed to allege an actionable property interest.

¶ 47        Private nuisance has been defined as the "substantial invasion of another's *interest in the use and enjoyment of his or her land*." (Emphasis added.) *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 204 (1997). Although the land-interest requirement is inherent to this definition, we have only had the opportunity to address this requirement in the context of a section 2-619 standing challenge. In *Whipple*, for instance, we addressed as a threshold matter the claim that plaintiffs lacked standing to challenge the passage of annexation ordinances and the grant of a special use permit for mining operations. *Whipple*, 2017 IL App (3d) 150547, ¶ 17. Ultimately, we found the

13

defendants failed to meet their burden of proving lack of standing where "each plaintiff allege[d] a possessory interest in property adjacent to or nearby the proposed mine site." *Id.* ¶ 18.

¶ 48    Having established that each *Whipple* plaintiff alleged a possessory property interest, we did not revisit the issue when discussing the sufficiency of plaintiffs' prospective nuisance allegations. Indeed, there was no need to revisit the issue where the plaintiffs were each alleged to "own, reside on, and/or operate farmland that is adjacent to or within ½ mile of" the site of the alleged prospective nuisance. *Id.* ¶ 3. This case is distinguishable in that regard, as plaintiffs' property interests vary widely with respect to the proposed development. We now address the property-interest requirement in the context of defendant's section 2-615 sufficiency challenge. To survive a section 2-615 challenge, a prospective *private* nuisance claim must allege a property interest under threat of invasion.

¶ 49    Plaintiffs have pled count I in a manner suggesting all plaintiffs are similarly situated in relation to the alleged nuisance. This grouping, however, is belied by the complaint itself, which alleges that only some plaintiffs have a property interest in the immediate vicinity of the proposed development. According to the complaint, some plaintiffs are individuals who simply have occasion to visit the Abraham Lincoln National Cemetery. Others are veterans organizations in neighboring counties. One plaintiff is an individual who does not reside or own property in Illinois. This in stark contrast to *Whipple*, in which the complaint alleged that all of the plaintiffs, without exception, had a possessory interest in land adjacent to or within one-half mile of the site of the alleged prospective nuisance. *Id.* Here, the lumping together of individuals and organizations with disparate property interests is unhelpful and obfuscates the ultimate private nuisance analysis. It is not, however, fatal to the claims of plaintiffs with actionable property interests.

14

¶ 50     Under the fourth amended complaint, many individual plaintiffs reside or own property in various localities throughout Will County.[3] Only a few plaintiffs, however, are specifically alleged to possess property interests that would neighbor the NorthPoint Development or be directly impacted by it in some way. Plaintiff Kathleen Kirby, a Jackson Township resident, is alleged to own property that "will be adjacent to the footprint of the development." Plaintiff Joseph Kinsella is alleged to own a family farm and business in Wilton Township adjacent to Route 52, "which will certainly be impacted by the overflow truck traffic caused by the proposed industrial park." Four plaintiffs are alleged to own property contiguous or adjacent to the proposed development: Coley O'Connell, Sarah O'Connell, Robert Hauert, and Angel Hauert. Viewing the complaint in the light most favorable to plaintiffs, we find count I sufficiently pled as to these six plaintiffs.

¶ 51     We acknowledge the circuit court found count I deficiently pled due to the lack of (1) allegations substantiating the immediacy of the threat of harm and (2) allegations detailing a "specific identifiable and measurable nuisance use." Because these objections mirror defendants' arguments on appeal, we address both.

¶ 52                              2. *Immediacy of Threat*

¶ 53     First, the circuit court emphasized that, for an injunction to issue, a threat of harm must be "real and immediate." Accordingly, it held plaintiffs to a pleading standard requiring "factual allegations showing that the threat is *immediate*." (Emphasis in original.) The court derived its immediacy requirement from the following language quoted by this court in *Whipple*:

     " 'While, as a general proposition, an injunction will be granted only to restrain an actual, existing nuisance, a court of equity may enjoin a threatened or anticipated nuisance, where

_____

[3]In 2020, Will County had a land area of 835.88 square miles. *U.S. Census Bureau QuickFacts: Will County, Illinois*, U.S. Census Bureau, https://www.census.gov/quickfacts/fact/table/willcountyillinois/LND110220 (last visited Jan. 16, 2024) [https://perma.cc/WG6T-5UT5].

15

it clearly appears that a nuisance will necessarily result from the contemplated act or thing which it is sought to enjoin. This is particularly true where the proof shows that the apprehension of material injury is well grounded upon a state of facts from which it appears that the danger is real and immediate. While care should be used in granting injunctions to avoid prospective injuries, there is no requirement that the court must wait until the injury occurs before granting relief.' " *Whipple*, 2017 IL App (3d) 150547, ¶ 46 (quoting *Fink v. Board of Trustees of Southern Illinois University*, 71 Ill. App. 2d 276, 281-82 (1966)).

*Fink* sets forth the following guiding principle: a prospective nuisance may be enjoined where it clearly appears a nuisance will necessarily result. *Id.* It then observes, " 'This is particularly true where the proof shows that the apprehension of material injury is well grounded *upon a state of facts* from which it appears that the danger is real and immediate.' " (Emphasis added.) *Id.* (quoting *Fink*, 71 Ill. App. 2d at 281-82). The circuit court underscored *Fink*'s "real and immediate" language but overlooked its context. Even so, plaintiffs' prospective nuisance allegations are well grounded upon a highly probable state of facts *derived from defendants' annexation agreement.* See *Kaiser v. Fleming*, 315 Ill. App. 3d 921, 925 (2000) (exhibits attached to complaint become part of complaint for purpose of motion to dismiss). When viewed alongside plaintiffs' allegations, the agreement substantiates the threat of a real and immediate danger.

¶ 54         Indeed, immediacy is sufficiently alleged where an intergovernmental contract has been executed, binding defendants for 20 years and providing for the development of a warehousing and truck terminal park. The contract carries with it significant obligations on the contracting parties and must be presumed enforceable through completion. If the agreement's objectives are realized, there is little doubt the outcome will be an increase in truck traffic and, necessarily, all consequences of that increase. "While care should be used in granting injunctions to avoid

prospective injuries, there is no requirement that the court must wait until the injury occurs before granting relief." *Fink*, 71 Ill. App. 2d at 282. Although the NorthPoint Development will take years to complete, there is no reason plaintiffs should wait until full build-out to seek an injunction.

¶ 55　　　　The circuit court misconstrued *Fink*'s immediacy language as requiring specific facts *at the pleading stage* indicating a real and immediate danger. Such a requirement is an overextension of the court's statement, made in the context of proof, not pleading, and prefaced by the phrase "this is particularly true," serving to highlight a circumstance where the guiding principle (see *supra ¶* 53) is particularly, though not exclusively, applicable. Our supreme court has, in fact, recognized that establishing a serious and imminent threat of harm is only one way to prompt the issuance of a permanent injunction. See *Wilsonville*, 86 Ill. 2d at 30 (" 'Ordinarily a permanent injunction will not lie unless (1) *either* the polluter seriously and imminently threatens the public health *or* (2) he causes non-health injuries that are substantial and the business cannot be operated to avoid the injuries apprehended.' " (Emphases added.) (quoting *Harrison v. Indiana Auto Shredders Co.*, 528 F.2d 1107, 1123 (7th Cir. 1975))). Thus, while evidence of a real and immediate danger makes a prospective nuisance an especially apt candidate for injunctive relief, it is not essential at the pleading stage.

¶ 56　　　　Further, the immediacy language reflects the unique facts in *Fink*, in which a real and immediate danger was shown where the defendant testified it intended to regularly spill large quantities of sewage effluent, after chlorination treatment, into an intermittent watercourse flowing past the plaintiffs' property. *Fink*, 71 Ill. App. 2d at 279. The intermittent watercourse was already present at the time of the injunction hearing, and it was just a matter of spilling the effluent in the watercourse for the harm to be done. *Id.* at 279-280. The nature of the alleged nuisance in the

17

present case is different, and perhaps more intrusive, than in *Fink*.[4] Count I sufficiently alleges both the vexing effects of vibrations, noise, and air pollution and the pernicious effects of increases in truck-generated smoke, fumes, and soot on plaintiffs with actionable property interests.

¶ 57                                    3. *Specific Nuisance Allegations*

¶ 58        The circuit court offered individual plaintiffs a chance to bring private nuisance actions in the future, on the condition they could allege a "specific, identifiable and measurable nuisance use"—whether threatened or actual—on "a parcel in the annexed area." Presumably, the court did not believe truck-traffic congestion could yield an actionable nuisance. It stated that while it agrees with the allegation that truck traffic is "annoying" due to noise, exhaust emissions, and safety concerns, and that it will likely increase over the coming years, plaintiffs failed to allege "specific facts showing a *real* threat of *immediate* harm, physical injury or violation of property interest." (Emphasis in original.)

¶ 59        Once again, the court underscored immediacy. Such a requirement is satisfied by virtue of defendants' fully executed annexation agreement. It makes little sense to foreclose a prospective nuisance action simply because the enabling contract will be actualized in phases or over a period of years. See *Whipple*, 2017 IL App (3d) 150547, ¶ 52 (executed annexation agreement establishes basis for not viewing allegations of prospective harm as merely uncertain or speculative). Moreover, while we agree that allegations of "specific, identifiable, measurable nuisance use" would be advantageous to plaintiffs' cause, the complaint furnishes sufficient allegations for a court, viewing the complaint in a light most favorable to plaintiffs, to find it sufficiently states a claim for private nuisance. Truck traffic that constantly annoys neighboring property owners due

---

[4]In *Fink*, the court affirmed the grant of injunctive relief despite recognizing the harm was largely subjective. *Fink*, 71 Ill. App. 2d at 280.

18

to noise, exhaust emissions, and safety concerns fits squarely within a private nuisance's general definition: a substantial invasion of a person's interest in the use and enjoyment of his property. *Id.* ¶ 45. The court should not attempt, at the pleading stage, to weigh the threatened harm on a "reasonableness scale." In resolving a section 2-615 motion to dismiss, the court may not assess whether truck-traffic congestion will necessarily result in a substantial and unreasonable interference with the neighboring residents' property interests. Accordingly, count I should have been allowed to stand. We reverse the dismissal of count I as to the following plaintiffs: (1) Coley O'Connell, (2) Sarah O'Connell, (3) Robert Hauert, (4) Angel Hauert, (5) Kathleen Kirby, and (6) Joseph Kinsella.

¶ 60                              C. Count II—Prospective Public Nuisance

¶ 61        Plaintiffs' briefs to this court make no reference to public nuisance as defined in the City's municipal code. Accordingly, plaintiffs have forfeited any argument that the circuit court erred in dismissing count II for failure to state a claim under the City's municipal code. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited ***."). We now consider whether plaintiffs sufficiently pled a claim for public nuisance under the common law.

¶ 62        "When the plaintiff's theory of liability is public nuisance, the pleading requirements are not exacting because the 'concept of common law public nuisance *** elude[s] precise definition.' " *Beretta U.S.A. Corp.*, 213 Ill. 2d at 364 (quoting *City of Chicago v. Festival Theatre Corp.*, 91 Ill. 2d 295, 306 (1982)). "A sufficient pleading in a public nuisance cause of action will allege a right common to the general public, the transgression of that right by the defendant, and resulting injury." *Id.* at 369. Rights common to the general public include "the rights of public health, public safety, public peace, public comfort, and public convenience." *Id.* at 370-71. Because the alleged injury is prospective, plaintiffs must sufficiently plead that it "will necessarily

19

result from the contemplated act or thing which it is sought to enjoin." (Internal quotation marks omitted.) *Wilsonville*, 86 Ill. 2d at 26.

¶ 63 Plaintiffs have sufficiently stated a claim for common-law public nuisance. With respect to public health, plaintiffs alleged that a substantial increase in truck traffic will generate significant amounts of noxious exhaust and diesel fumes especially harmful to the older members of the community. With respect to public peace and comfort, plaintiffs alleged truck-traffic noise, vibration, and pollution will interfere with the dignity, serenity, and quiet of visitors at a nearby national cemetery. With respect to public convenience, plaintiffs alleged truck-traffic congestion will increase motorists' travel times in the community. With respect to public safety, plaintiffs alleged constant truck traffic will lead to a rise in semi-truck crash incidents.

¶ 64 Defendants argue plaintiffs failed to allege that the NorthPoint Development would violate any noise or air pollution regulations. While this could be a factor for the circuit court to consider at an injunction hearing, it is not a pleading requirement. Defendants also argue that an Environmental Defense Fund article referenced in plaintiffs' opening brief to this court, which discusses the burden of truck-generated air pollution exposure, "recognizes that there is a market-driven need for warehouses, which bring jobs and economic growth opportunities; that there are affordable ways to mitigate pollution, including zero-emissions trucks[;] and that recent moves of the government are turbocharging investments in clean non-diesel trucks." This information, while perhaps relevant in an injunction proceeding, does not negate the validity of plaintiffs' well-pled allegations.

¶ 65 The circuit court, in dismissing count II, stated that injunctive relief would be "of dubious value since truck traffic in the Joliet area *** is likely to increase even if this development were enjoined since warehouse and industrial uses continue to grow ***, simply due to the existence of

the intermodal facility now operating at its Will County location." The court further stated that the complaint's public nuisance allegations were insufficient for failing to allege the "environmental and safety concerns" of *existing* levels of local truck traffic. The court opined that such "factual[ ] and statistical[ ]" information "is needed to determine whether future increases pose unreasonable levels by comparison."[5] We do not agree with the need for specific benchmark statistics at the pleading stage. An injunction hearing is required if the court wishes to compare current and prospective data to determine whether the proposed development is reasonable. Moreover, the court's prognosis of the requested injunction's efficacy is improper at this stage—as is its consideration of the existing intermodal facility in Will County. "[C]ourts may not rely on matters outside the complaint in considering a section 2-615 motion." *Lake Point Tower Condominium Ass'n v. Waller*, 2017 IL App (1st) 162072, ¶ 10.

¶ 66         We emphasize that section 2-615 warrants dismissal only if it is clear from the pleadings that plaintiffs can prove no set of facts entitling them to relief. *Id.* Construing the complaint in the light most favorable to plaintiffs, and drawing all reasonable inferences in their favor, it is not clear that plaintiffs can prove no set of facts entitling them to relief. As pled, count II sufficiently alleges rights common to the general public, the likely transgression of those rights by defendants, and resulting injuries. Accordingly, we reverse the dismissal of count II insofar as it adequately states a claim for common-law public nuisance.

¶ 67                         D. Count III—Validity of Annexation Agreement

¶ 68         Plaintiffs argue they have sufficiently pled count III, in which they seek to void defendants' annexation agreement for vagueness. Count III rests on the theory that the annexation agreement

---

[5]The circuit court also highlighted what it believed was the lack of an immediate threat, which we have already addressed. *Supra* ¶¶ 53-59.

21

is so indefinite and vague that a contract was never formed. It alleges, primarily, that numerous essential terms are expressly contingent on a traffic study, the absence of which renders the material terms of the agreement vague and the parties' contractual obligations undeterminable.

¶ 69 Defendants argue, as they did in the section 2-619 portion of their combined motion to dismiss, that plaintiffs lack standing to challenge the annexation agreement's enforceability. A section 2-619(a)(9) motion to dismiss is proper where "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2022). "Lack of standing is an 'affirmative matter' properly challenged in a section 2-619(a)(9) motion to dismiss." *McCready v. Secretary of State*, 382 Ill. App. 3d 789, 794-95 (2008). Much like section 2-615, section 2-619 requires the circuit court to take all well-pled facts in the complaint as true. *Id.* at 795. The court's dismissal under either section is subject to *de novo* review. *Id.*

¶ 70 "[O]nly a party to the contract, one in privity with a party to the contract, or a third-party beneficiary of the contract has standing to sue on a contract." *Haake v. Board of Education for Glenbard Township High School District 87*, 399 Ill. App. 3d 121, 128-29 (2010). Nonparties to a contract, including a municipal contract, who wish to sue based on the contract must plead their status as third-party intended beneficiaries. See *Salvi v. Village of Lake Zurich*, 2016 IL App (2d) 150249, ¶¶ 53, 55. Plaintiffs have not alleged third-party beneficiary status. Instead, they argue count III is properly brought as a taxpayer action by six individual plaintiffs who pay taxes to the City.

¶ 71 A taxpayer action is brought "for the purpose of seeking relief from illegal or unauthorized acts of public bodies or public officials, which acts are injurious to their common interests as such taxpayers." (Internal quotation marks omitted.) *Scachitti v. UBS Financial Services*, 215 Ill. 2d

22

484, 493 (2005). While the thrust of the complaint is arguably to prevent "acts injurious to [plaintiffs'] common interests," count III seeks to invalidate a contract based on vague and indefinite provisions. Unsatisfactory contract drafting does not qualify as an illegal or unauthorized act of a public body or public official. Accordingly, we affirm the court's dismissal, although we do so under section 2-619 of the Code. See 735 ILCS 5/2-619 (West 2022); see also *People v. Gawlak*, 2019 IL 123182, ¶ 39 (reviewing court may affirm on any basis in the record).

¶ 72                          E. Count IV—Hearing Notice Deficiencies

¶ 73        Count IV also seeks to invalidate the annexation agreement. Unlike count III, however, count IV does not attack the contract's substance. Instead, it attacks the notice issued for the public hearing at which the agreement was approved. Plaintiffs alleged the City issued an inaccurate and confusing notice which failed to comport with due process under the Illinois Constitution. Specifically, plaintiffs alleged the notice contained incomplete, missing, and mismatched PINs. Plaintiffs did not, however, allege any prejudice resulting from the alleged defects. Failure to allege prejudice from a defective notice is fatal to plaintiffs' claim. See *Rogers v. City of Jerseyville*, 196 Ill. App. 3d 136, 140 (1990) ("Defects in notice of hearing on an application for zoning variances may not be raised by parties who had actual notice of the meeting, failed to object to the alleged defect at the meeting, and showed no prejudice from such defect."). The court properly dismissed count IV.

¶ 74                          F. Count V—Open Meetings Act Violation

¶ 75        Finally, count V seeks to nullify the annexation agreement because the November and December 2021 plan commission hearings were conducted without a face-mask requirement. Plaintiffs alleged that, in September 2021, "Governor JB Pritzker signed Executive Order 21-22, requiring *all individuals over the age of 2* and who can medically tolerate a face covering to wear

23

a face covering when in indoor public places." (Emphasis in original.) See Exec. Order No. 2021-22, 45 Ill. Reg. 11,639 (Sept. 3, 2021), https://coronavirus.illinois.gov/content/dam/soi/en/web/illinois/documents/government/executive-order-2021-22.pdf [https://perma.cc/6ZVT-ES2M]. Plaintiffs alleged the City did not require masks at either hearing despite holding both during the outbreak of the Omicron variant of COVID-19 in an indoor public place subject to the governor's mask mandate. As a result, members of the public who wished to participate in the hearings were forced to risk their health and the health of their families and friends. This, according to plaintiffs, amounted to a violation of section 2.01 of the Open Meetings Act (Act), which requires meetings be held at "specified times and places which are *convenient* and open to the public." (Emphasis added.) 5 ILCS 120/2.01 (West 2020). Plaintiffs argue that an open meeting held in an inconvenient place violates the Act.

¶ 76        "A meeting can be open in the sense that no one is prohibited from attending it, but it can be held in such an ill-suited, unaccommodating, unadvantageous place that members of the public, as a practical matter, would be deterred from attending it." *Gerwin v. Livingston County Board*, 345 Ill. App. 3d 352, 361 (2003). "Section 2.01 requires a place that is 'convenient' not merely to members of the public who show up for the meeting but to the 'public' as a whole." *Id.* at 362. "The concept of public convenience seems to imply a rule of reasonableness, not absolute accessibility but reasonable accessibility." (Internal quotation marks omitted.) *Id.*

¶ 77        In essence, count V alleges the City's decision not to mandate masks amounted to a violation of the Act's convenient-meetings requirement. Although the City's failure to mandate masks is arguably contrary to the spirit of the Act, as it could deter public participation, it is not contrary to the Act's plain language. "The best indicator of legislative intent is the statutory language itself, given its plain and ordinary meaning." *Cothron v. White Castle Systems, Inc.*, 2023

24

IL 128004, ¶ 20. "Where the language is clear and unambiguous, we must apply the statute without resort to further aids of statutory construction." *Id.*

¶ 78    Section 2.01 requires municipalities to hold public hearings at convenient *places* and *times*. 5 ILCS 120/2.01 (West 2020). The section does not require municipalities to adjust their hearing protocols based on public health advisories or external health directives. Moreover, by plaintiffs' own admission, the health directives in this case targeted individuals, not municipal governments. See *supra* ¶ 75. Thus, given that (1) the executive order did not task municipal governments with mask-mandate enforcement and (2) the legislature placed a convenience requirement exclusively on meeting *places* and *times*, the complaint cannot state a claim under section 2.01 of the Act. In so ruling, we recognize the hearings' mask-optional rule might have deterred public participation; however, the judiciary may not act as a policymaker in construing the Act's provisions. See *Phoenix Insurance Co. v. Rosen*, 242 Ill. 2d 48, 56 (2011) ("[W]hen the legislature has declared, by law, the public policy of the State, the judicial department must remain silent, and if a modification or change in such policy is desired the law-making department must be applied to, and not the judiciary, whose function is to declare the law but not to make it." (Internal quotation marks omitted.)).

¶ 79    Count V does not allege the City failed to provide a convenient time for its hearings. Nor does it allege the City held the hearings in an "ill-suited, unaccommodating, [or] unadvantageous" place. *Gerwin*, 345 Ill. App. 3d at 361. Accordingly, when construed in the light most favorable to plaintiffs, count V failed to state a cause of action under the Act. The court properly dismissed count V.

¶ 80                                    III. CONCLUSION

25

¶ 81    The judgment of the circuit court of Will County is affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

¶ 82    Affirmed in part and reversed in part.

¶ 83    Cause remanded.

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Will County, No. 20-CH-739; the Hon. Theodore J. Jarz, Judge, presiding. |
| **Attorneys for Appellant:** | Peter Vincent Bustamante, of Law Office of Peter V. Bustamante, Robert Fioretti, of Fioretti Campbell LLC, and Richard F. Linden, of Law Offices of Richard Linden, all of Chicago, for appellants. |
| **Attorneys for Appellee:** | Bryan W. Kopman and Kathy M. Sons, of KGG, LLC, and Sabrina Spano and Christopher Regis, both of Joliet, for appellees. |